**Ralph C. KLOES, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 83–C–814–S.

United States District Court, W.D. Wisconsin.

Jan. 17, 1984.

As Amended May 8, 1984.

Ralph C. Kloes, pro se.

John R. Byrnes, U.S. Atty. by Beth A. Sabbath, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

SHABAZ, District Judge.

Before the Court is defendant's motion for summary judgment. This case arises under 26 U.S.C. § 6702, plaintiff having brought this action to recover a penalty assessed against him by the Internal Revenue Service. Jurisdiction is based on 28 U.S.C. § 1346. The facts are as follows:

## FACTS

On or about April 14, 1983, plaintiff filed what purported to be a tax return for the calendar year 1982 by filing a signed Form 1040 with the Internal Revenue Service.

The tax return filed by plaintiff did not contain any information regarding income, deductions, or tax owed. Instead, each line was completed with an asterisk and contained the statement, apparently in reference to the asterisk, that "This means specific objection is made under the 5th Amendment, U.S. Constitution. Similar objection is made to the questions under the 1st, 4th, 7th, 8th, 9th, 10th, 13th, 14th, and 16th Amendments." A letter attached to the return contained the statement "I offer to amend or refile this return exactly as you wish it, if you will please show me how to do so without waiving my constitutional rights."

On July 12, 1983 the Internal Revenue Service assessed a $500 penalty against plaintiff, purportedly pursuant to Section 6702 of the Internal Revenue Code. Plaintiff was notified by letter of this action dated that day.

By letter dated June 30, 1983, but received by the Internal Revenue Service on August 4, 1983 and accompanied by a Form 843, plaintiff contested the penalty. He submitted 15% of the penalty; that is, $75, in accordance with the statute.

The Internal Revenue Service denied plaintiff's claim for a refund of the penalty by letter dated August 12, 1983.

Plaintiff filed this lawsuit on September 8, 1983.

## MEMORANDUM

■ The penalty assessed against the plaintiff is based on 26 U.S.C. § 6702 which states:

§ 6702. Frivolous income tax return

(a) Civil penalty. —if—

(1) any individual files what purports to be a return of the tax imposed by subtitle A but which—

(A) does not contain information on which the substantial correctness of the self-assessment may be judged, or

(B) contains information that on its face indicates that the self-assessment is substantially incorrect; and

(2) the conduct referred to in paragraph (1) is due to—

(A) a position which is frivolous, or

(B) a desire (which appears on the purported return) to delay or impede the administration of Federal income tax laws,

then such individual shall pay a penalty of $500.

This law, effective for documents filed after September 3, 1982, was part of the Tax Equity and Fiscal Responsibility Act (TEFRA) of 1982. Plaintiff challenges the constitutionality of TEFRA on the ground that it was passed in violation of the Origination Clause, Article I, Section 7, of the United States Constitution.

This challenge, which became fashionable in some circles shortly after passage of TEFRA, is without merit. In *Frent v. United States*, 571 F.Supp. 739 (E.D.Mich. 1983), the Court faced a similar challenge and rejected it on the ground that TEFRA began its history as H.R. 4961, denominated Miscellaneous Revenue Act of 1981. Although the bill underwent wholesale changes in the Senate after its passage by the House (the Senate passed the bill after substituting new language for the entire House bill after the enacting clause), it originated in the House for purposes of the Origination Clause. This conclusion was based on the case of *Flint v. Stone Tracy Co.*, 220 U.S. 107, 31 S.Ct. 342, 55 L.Ed. 389 (1911). In that case, the Supreme Court upheld the constitutionality of a corporate tax enacted as part of a House bill which the House had passed as an inheritance tax bill originally. The Supreme Court stated, at 143, 31 S.Ct. at 346, that:

The Bill having properly originated in the House, we perceive no reason in the constitutional provision relied upon why it may not be amended in the Senate in the manner which it was in this case. The amendment was germane to the subject-matter of the bill and not beyond the power of the Senate to propose.

The history of TEFRA, *see Moore v. United States House of Representatives*, 553 F.Supp. 267 (D.D.C.1983) for a more thorough history) is, for purposes of plaintiff's challenge identical to that posed in *Flint*. This precedent is compelling and the Court must reject plaintiff's challenge.

Furthermore, the Court has considered, and must reject, the argument that the spirit, if not the letter, of a revered constitutional principle has been violated. It is apparent that the framers of the Constitution believed, with respect to the Origination Clause, that the House of Representatives would more closely reflect the views of the people (probably because they represented smaller and, usually, more equal divisions of the population, to say nothing of the fact that members of the Senate were originally appointed). *See* Madison, Federalist Papers, # 58. Thus, the responsibility for raising revenue was, in the first instance, to be the prerogative of the House. Once the House had exercised its prerogative, the Senate was given the opportunity to agree, disagree or change any such bill as it saw fit. With regard to TEFRA, the House made the original decision to introduce and pass a revenue raising bill. That is all the Constitution requires. The fact that the Senate substituted what amounts to an entirely different bill does not violate the principle because the House started the process. In a practical sense, this is the conclusion that must

be reached. If the power of the Senate to amend were limited in any way, there would be a constitutional cloud over every revenue-raising measure which had been modified in the Senate in any way. There is no middle ground that could be established which would not result in a serious disruption of the administration of government. The framers were faced with only two logical positions after deciding on the necessity of an Origination Clause. Either forbid Senate participation or allow full participation after the House had acted. They chose the latter.

■ Nor does the Court find merit in plaintiff's challenge that § 6702 violates due process because of the lack of a hearing prior to assessment of the penalty. The situation here is similar to that faced by the taxpayer in *Bob Jones University v. Simon*, 416 U.S. 725, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974). The Court held that a post-assessment judicial review provided all the process that was due. The right of action given to a taxpayer who has been assessed a penalty under § 6702, a right being exercised by this plaintiff, provides him with sufficient opportunity to receive a fair hearing on his contentions. Thus, plaintiff's due process rights are adequately protected by this very proceeding. The availability of summary disposition, under Federal Rules of Civil Procedure 12 and 56, does not, as plaintiff asserts, undercut this argument. The fact that defendant has made a motion for summary judgment does not mean that plaintiff is not receiving a hearing on his claim. The rule does not allow resolution of factual disputes; it merely allows the Court to decide a case on the law when there are no material factual disputes. Plaintiff has been given the opportunity to state his case and he has exercised it.

■ Plaintiff's final constitutional argument is that the term "frivolous" in the statute is unconstitutionally vague. Plaintiff also makes a closely related challenge that his return is not frivolous.

The statute, by its terms, is applicable only if three conditions are met. The tax-payer must have filed what purports to be a tax return. Plaintiff has done so. Second, the return must either fail to contain sufficient information to judge whether the self-assessment of taxes is correct, or must contain information which, on its face, shows that the self-assessment is incorrect. This requirement can be satisfied by the face of the document which has been filed. In this case, it is clear that plaintiff's purported return contains insufficient information to judge whether his self-assessment is correct. For practical purposes it contains no information.

The third requirement is that the deficiencies which appear on the return are due to either a position which is frivolous or a desire, apparent from the face of the return, to delay or impede the administration of the tax laws.

■ Although the defendant has asserted that plaintiff's return was both frivolous and also evidences a desire to delay or impede the administration of the tax laws, the Court must reject the second assertion. While it is a fair inference that plaintiff was motivated by a desire to impede the administration of tax laws, this fact cannot fairly be said to be established for purposes of a summary judgment motion.

Therefore, the only question is whether the deficiencies in plaintiff's return are due to a position which is frivolous. The Court must conclude that the term "frivolous" is capable of sufficiently precise meaning so as to not be unconstitutionally vague. In a legal sense, the word has been defined as "having no basis in law or fact." *See* Webster's Third International Dictionary. *See also* Black's Law Dictionary (5th Ed.) (readily recognizable as devoid of merit). Furthermore, the Senate, in reporting the bill for passage, explained that a return was frivolous when "many or all of the line items are not filled in except for references to spurious constitutional objections." 1982 U.S.Code Congressional and Administrative News 781, 1024 (Vol. 2). There is no constitutional taint in the use of the term "frivolous."

■ The remaining question is whether plaintiff's return was motivated by a frivolous position; that is, whether plaintiff's constitutional objections are clearly without legal basis. The Court must conclude that they are.

Plaintiff's return, although specifying multiple constitutional objections, fails to specify a legitimate reason for the objections. In the letter which accompanied his return, plaintiff explained that he didn't understand how he could answer the questions without waiving his "right to privacy under the 4th Amendment," and his Fifth Amendment right not to be a witness against himself. He also explained that he could not swear that the information in the return was true, correct and complete because he could never be certain he was absolutely accurate. To him, the signing of a return would be a knowing misstatement punishable by three years in prison under § 7206 of the Code. He states that he is afraid to make a slight factual error because it might subject him to criminal prosecution. The lack of merit in this entire argument is shown by language cited in plaintiff's brief:

> Perfect accuracy or completeness is not necessary to rescue a return from nullity, if it purports to be a return, is sworn to as such, and evinces an honest and genuine endeavor to satisfy the law.

*Zellerbach Paper Co. v. Helvering*, 293 U.S. 172, 180, 55 S.Ct. 127, 130, 79 L.Ed. 264 (1934).

In his brief, plaintiff repeats many of these arguments and also lists reasons why disclosure of the information requested in the tax return might be incriminating. For instance, plaintiff argues that disclosure of name and address might allow the government to locate fugitives from justice. To suggest that forced disclosure of such information violates the Fifth Amendment is ludicrous. No case law is offered supporting such a proposition. Plaintiff also argues that disclosure of charitable contributions reveal the organizations he supports or to which the citizen belongs. He suggests that, if such organizations become

illegal, he has waived the use of such information against him. With all due respect, such information is probative of nothing except prior association which, as extensive case law shows, is no crime at all. The remainder of plaintiff's arguments in this respect are likewise without merit.

Even if the information requested on the return could be validly objected to on the basis of the Fifth Amendment, or any other Amendment for that matter, plaintiff has made utterly no showing that any specific answer on the form would incriminate him. It may very well be that a valid Fifth Amendment objection can be made on a tax return. *See Garner v. U.S.*, 424 U.S. 648, 96 S.Ct. 1178, 47 L.Ed.2d 370 (1976), *U.S. v. Sullivan*, 274 U.S. 259 (1927). Plaintiff's problem is that he has not shown his objections to be valid. They are, in a word, frivolous. The law is clear and well settled that Fifth Amendment objections must be based on something more than imaginative conjecture. As was stated in *U.S. v. Verkuilen*, 690 F.2d 648, 654 (7th Cir.1982):

> [A] taxpayer must make a colorable showing that he is involved in some activity for which he could be criminally prosecuted in order to validly claim the Fifth Amendment privilege on his income tax return.

(citations omitted). The Court in that criminal prosecution approved a jury instruction which stated:

> The mere unsupported assertion of a Fifth Amendment privilege without some additional explanation, does not establish that the invocation of the Fifth Amendment was proper.

*Id.*

■ Plaintiff has made no such showing here. The Court is aware that the burden in the first instance here is on the government. 26 U.S.C. § 6703(a). The Court believes that the government has satisfied its burden, both under the statute and under the Federal Rules of Civil Procedure, by submission of plaintiff's return and the letter which accompanied it. On their face, these documents clearly show the frivolous nature of plaintiff's objections. Just as in

the criminal prosecution context, see *Verkuilen, supra,* the burden shifts to the taxpayer to show the validity of his objections. A blanket assertion of privilege is ineffective. *Id.*

Plaintiff having failed to carry his burden in this proceeding, summary judgment is appropriate.

■ The defendant has argued that the granting of attorney fees would be appropriate in this case pursuant to 28 U.S.C. § 1927. The statute allows such assessment when the person conducting the case for the opposing party "multiplies the proceedings in any case unreasonably and vexatiously ..." While the Court has found plaintiff's arguments herein totally unpersuasive, and they are, in a sense, frivolous just as his return was frivolous, the Court cannot conclude that plaintiff has unreasonably or vexatiously multiplied the proceedings. Plaintiff has used a statutorily provided procedure to litigate a number of issues which have not been subjected to appellate review. The Court may have been unconvinced by the arguments offered, but this Court will not penalize a litigant for testing the waters surrounding a fairly controversial new statute. Accordingly, defendant's motion for excess costs and attorney fees will be denied.

### ORDER

IT IS ORDERED that defendant's motion for summary judgment is GRANTED. Costs to the defendant.

IT IS FURTHER ORDERED that defendant's motion for excess costs and attorney fees pursuant to 28 U.S.C. § 1927 is DENIED.

IT IS FURTHER ORDERED that defendant's motion for a protective order is moot.