KAHN, Emily, Appellant,

v.

UNITED STATES of America.

No. 83–1897.

United States Court of Appeals, Third Circuit.

Argued June 29, 1984.

Decided Jan. 23, 1985.

As Amended Feb. 4 and 14, 1985.

Rehearing and Rehearing En Banc Denied Feb. 19, 1985.

---

Peter Goldberger, Los Angeles, Cal., for appellant; Alan Kahn, Abrahams & Lowenstein, Thomas B. Harvey, American Civil Liberties Foundation, Philadelphia, Pa., of counsel.

Dawn MacPhee, Asst. U.S. Atty., Philadelphia, Pa., Gary R. Allen, Elaine F. Ferris (argued), Michael L. Paup, U.S. Dept. of Justice, Tax Div., Washington, D.C., for appellee.

Before ADAMS, HIGGINBOTHAM and VAN DUSEN, Circuit Judges.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

Taxpayer Emily Kahn appeals from summary judgment in favor of the United States in this tax penalty refund suit under 26 U.S.C. § 7422 (1982). She contests the assessment of a $500.00 civil penalty for filing a "frivolous income tax return," under 26 U.S.C. § 6702 (1982), summarily imposed as a result of her claiming a "war tax refusal" credit on her federal income tax return for 1982.

This controversy presents several important statutory and constitutional questions for this court's consideration, including whether Emily Kahn was properly subjected to the imposition of a civil penalty under the terms of 26 U.S.C. § 6702, and whether the imposition of the penalty violated Emily Kahn's first amendment right to freedom of speech. We believe, however, that the primary issue in this case is whether the due process clause of the fifth amendment requires that prior to the immediate imposition of a civil penalty, a taxpayer be afforded an opportunity for an administrative hearing in addition to the post-deprivation judicial review provided by the statute. 26 U.S.C. § 6703 (1982).

For the reasons that follow, we will affirm the decision of the district court.

### I.

As an appellate court reviewing the grant of a motion for summary judgment, we exercise plenary review. Our task is to determine whether there is no genuine issue as to any material fact in dispute and whether the moving party, the United States, is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *In Re Japanese Electronic Products Antitrust Litigation,* 723 F.2d 238, 257 (3d Cir.1983).

The parties here agree that the material facts are uncontroverted.

Emily Kahn filed an individual federal income tax return (Form 1040A) for 1982. She reported her adjusted gross income as $15,338.03 (lines 6–12), claimed a $25 charitable contribution deduction, a personal exemption of $1,000.00 and derived her taxable income of $14,313.03 (lines 13–16). She then calculated her tax of $2,175 from the table provided (line 19a). Line 19b, as set forth in the section of the form entitled "Tax, Credits and Payments", called for information as to the "Advance EIC payment (from W–2 form(s))." On line 19b, Emily Kahn crossed out the printed words and wrote "46% WAR TAX REFUSED (SEE ATTACHED LETTER)." She then subtracted this figure, $1,000.50 (*i.e.*, 46% of $2,175.00), from the tax. Due to a $1.00 arithmetic error, the total tax liability on line 20 was reduced by the amount of $999.50 instead of $1,000.50, and the figure $1,175.50 rather than $1,174.50 was entered as the difference between $2,175.00 and $1,000.50. Since the return reported withholding in the amount of $2,296.94 (line 17b), Emily Kahn sought a refund, on line 21, in the amount of $1,121.44. Had she not sought the "war tax" refund, a $121.94 refund would have been due, the difference between $2,296.94 and $2,175.00. Appendix ("App.") at A.8.

Attached to the return was "An Open Letter to the IRS" stating that Emily Kahn was claiming a "War Tax Refusal Refund" equivalent to the estimate compiled by SANE (Citizens' Organization for a Sane World) of the proportion of her taxes to be applied by the United States government in 1983 to military expenditures. She suggested that the refund she was "demanding" by her return be sent directly to the "'Conscience and Military Tax Campaign Escrow Account for a World Peace Tax Fund." She envisioned that the money would be held to collect interest and upon enactment of the World Peace Tax Fund Act, H.R. 4897, 97th Cong., 1st Sess., —— Cong.Rec. —— (daily ed. July 24, 1981), it would be returned to the Treasury to be included in a segregated portion of the taxes of conscientious objectors for non-military uses. App. at A.9.

The Internal Revenue Service ("the IRS") immediately assessed a $500.00 penalty against Emily Kahn pursuant to section 6702 for filing a "frivolous income tax return". She paid 15% of the penalty as required by section 6703(c) and as specified by the penalty notice. She then filed a claim for refund of the $75.00 portion of the assessed penalty of $500.00 (Form 843), stating:

> I filed an accurate income tax return for the year 1982. It was complete and according to protocol except for one thing—I requested a refund of $1000. in "war taxes" because I do not wish to pay to support the military policies of this administration. This was a symbolic gesture, as I did not expect the IRS to refund the $1000. In actuality, I *am* owed a small sum, however (I believe approximately $27.00—I do not have a copy of my return.)
>
> I was fined $500. for filing a "frivolous tax return." I contest, as I believe that this return was not, indeed, frivolous, but a peaceful and respectable political gesture, one I believe I have a right to make as a citizen of a country which permits freedom of speech. I do not intend to pay a $500. penalty, and am filing this claim for refund of my 15% payment enclosed. I would also like the money I was actually owed by the IRS.

App. at A.5.

The claim was disallowed by the Director of the Fresno, California, IRS Service Center for the reason that: "The claim is based on your view that certain laws are unconstitutional; only the courts have the authority to pass on such matters." App. at A.21.

On September 9, 1983, Emily Kahn brought this suit for refund in the United States District Court for the Eastern District of Pennsylvania, alleging that the assessment of $500.00 and the collection of $75.00 was "improper, illegal and erroneous." She asserted that her tax return did

not violate section 6702 and that even if application of the provision was warranted, it "violates the United States Constitution." She sought a judgment, *inter alia,* abating the $500.00 penalty and refunding her $75.00 prepayment. App. at A.3–A.4.

The United States filed a motion to dismiss, or in the alternative, for summary judgment, averring that Emily Kahn "asserted a frivolous position in her 1982 income tax return." App. at A.6. The government argued that the return came within section 6702(a)(1)(B) in that it contained "information that on its face indicates that the self-assessment is substantially incorrect." Moreover, the return implicated section 6702(a)(2)(A) because the "claiming of a war tax credit is frivolous." According to the government, section 6702 is constitutional and the penalty did not violate the first amendment because "the incidental suppression of speech … was justified … in order to maintain the integrity of the income tax system." App. at A.14.

Emily Kahn answered the government's motion and filed a cross-motion for summary judgment. She maintained that her tax return did not violate section 6702 and alternatively, even if section 6702 is deemed to apply, it is unconstitutional because it has the purpose and effect of limiting political speech. Plaintiff's Answer to Defendant's Motion to Dismiss Or, Alternatively, For Summary Judgment and Cross-Motion For Summary Judgment (E.D.Pa. No. 83–4406) at 3, 7. Judgment was entered in favor of the government from which the taxpayer now appeals.

During the pendency of these proceedings, collection of the balance of the penalty has been stayed pursuant to section 6703(c).

## II.

We must first decide whether section 6702 applies to the 1982 return filed because: (a) Emily Kahn's self-assessment was substantially incorrect and (b) her conduct was due to a position which is frivolous. Second, we must consider whether, even if the statute has been properly applied to her, it nonetheless violates her first amendment right to freedom of speech. Finally, we feel it necessary to discuss the procedural due process implications of the summary assessment and collection of this civil penalty without a prior administrative hearing.

## III.

By section 326(a) of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub.L. No. 97–248, 96 Stat. 324, Congress provided for the immediate assessment of a civil penalty of $500.00 on "any individual [who] files what purports to be a return of [income tax]" after September 3, 1981 where (1) the document "does not contain information on which the substantial correctness of the self-assessment may be judged; " or it "contains information that on its face indicates that the self-assessment is substantially incorrect," 26 U.S.C. § 6702(a)(1)(B), and (2) such conduct arises either from "a position which is frivolous" or from "a desire (which appears on the purported return) to delay or impede the administration of Federal income tax laws." 26 U.S.C. § 6702(a)(2)(A).[1]

---

1. Section 6702, in its entirety, provides:
   § 6702. Frivolous income tax return.
   (a) Civil penalty.
   If—
   (1) any individual files what purports to be a return of the tax imposed by subtitle A but which—
   (A) does not contain information on which the substantial correctness of the self-assessment may be judged, or
   (B) contains information that on its face indicates that the self-assessment is substantially incorrect; and

   (2) the conduct referred to in paragraph (1) is due to—
   (A) a position which is frivolous, or
   (B) a desire (which appears on the purported return) to delay or impede the administration of Federal income tax laws,
   then such individual shall pay a penalty of $500.
   (b) Penalty in addition to other penalties
   The penalty imposed by subsection (a) shall be in addition to any other penalty provided by law.

Initially, Ms. Kahn asserts that the penalty assessed in this case was incorrect because her actions fall outside the scope of the statute. This court believes that the plain language of the statute and the legislative history supports a contrary conclusion.

### A.

Emily Kahn takes the position that the term "self-assessment" as used in section 6702 is undefined and meaningless in tax law. Moreover, to the extent that any specific meaning can be assigned, she claims that it refers to the amount entered on line 19a of the 1982 Form 1040A (or line 40 of the 1982 "long form" 1040) without regard to the credits, payments or refund calculations which are entered subsequently. She thus argues that the "self-assessment" on her 1982 income tax return was not in any way incorrect.

■ We believe, however, that Emily Kahn's tax return satisfies the first element of the section 6702 test. As the Supreme Court made clear in *Commissioner v. Lane-Wells Co.*, 321 U.S. 219, 223, 64 S.Ct. 511, 513, 88 L.Ed. 684 (1944), the system of self-assessment is the basis of our American scheme of income taxation and the duty of the taxpayer to self-assess is not met unless the return is properly filled out in its entirety. "The purpose is not alone to get tax information in some form but also to get it with such uniformity, completeness, and arrangement that the physical task of handling and verifying returns may be readily accomplished." *Id.* Although the return in this instance contained sufficient information for the IRS to judge the correctness of the self-assessment and to recalculate and assess the tax properly owed after it disallowed the war tax credit, the return filled out by the taxpayer was also plainly incorrect in its state-ment of allowable credits, the total tax and amount to be refunded. Ms. Kahn reduced the amount of the total tax liability reported on her 1982 income tax return by altering line 19b of the 1040A form to read "46% WAR TAX REFUSED" and by claiming a credit in the amount of $1,000.50.[2]

■ In view of the legislative history, we are persuaded by the government's argument that although the term "self-assessment" is not given a precise definition in section 6702, it refers to "the amount of tax shown on the return." S.Rep. No. 494, 97th Cong., 2nd Sess. 277, *reprinted in* 1982 U.S.Code Cong. & Ad.News 781, 1024. "Whatever other meaning may be attributed to the term 'self-assessment', it clearly includes a taxpayer's representations on the return as to the tax due or the refund claimed." *Franklet v. United States*, 578 F.Supp. 1552, 1555 (N.D.Cal.1984). It is a descriptive phrase, not a technical one in tax law, referring to our honor system of taxation whereby an individual taxpayer answers the applicable questions on his or her return, calculates the tax on the adjusted gross income, files the return and pays the amount owed, or, receives a refund of amounts previously paid through withholding or other means. *Lane-Wells Co., supra*, 321 U.S. at 223, 64 S.Ct. at 513; A.J. Mertens, *Law of Federal Income Taxation*, § 49.81, at 176.

■ By taking the "war tax" credit, Emily Kahn represented that she owed only a little more than half of her actual tax liability and was entitled to a refund nearly nine times greater than the correct amount. Her tax return showed an incorrect tax due because of an unallowable deduction. Within the meaning of section 6702, we find that the self-assessment here is substantially incorrect on its face.

---

2. Ms. Kahn repeatedly contends that she has not taken a "credit." As the government points out, the legislative history indicates that section 6702 does not differentiate between protest deductions and protest credits. The penalty applies equally to the taxpayer who files a return claiming a war tax deduction that reduces his taxable income and to the taxpayer who shows a reduced tax due by the amount to be allocated to military spending. S.Rep. No. 494, *supra*, at 278, 1982 U.S.Code Cong. & Ad.News at 1024. We are not persuaded by the distinction Ms. Kahn seeks to make in this case.

### B.

We recognize though that even if the self-assessment was substantially incorrect, Emily Kahn is not subject to a penalty under section 6702(a) unless "the conduct referred to ... [was] due to ... a position which is frivolous." 26 U.S.C. § 6702(a). Thus, the government argues that Emily Kahn's claim for a "war tax refusal" credit was wholly without legal foundation and therefore "frivolous" within the meaning of section 6702(a)(2)(A). According to Emily Kahn, she took no "position" on any point of tax law, much less one that was "frivolous."

■■■ Section 6702 does not define the terms "position" or "frivolous," but whatever else is meant by the term "frivolous," it is reasonable to conclude that a claim is frivolous when there is no argument on either the law or the facts to support it. Both taxpayer's return and her accompanying letter reflect the claim that she was entitled to a credit against her federal income tax liability for 1982 because of her objections to the potential uses to which the fund were to be put. There is no provision in the Internal Revenue Code which provides for a credit, or a deduction for that matter, based on dissatisfaction as to the use to which the tax payment will be put. Therefore, Emily Kahn's claim and demand for a 46% war tax refund is without foundation as a matter of law.

Moreover, this claim represents the sort of "position on [a] point of tax law" that Congress intended to be subject to this penalty provision. The legislative history of section 6702 reveals that it was passed in an effort to deter tax protestors from filing frivolous returns.[3] We find that "war tax" claims were specifically identified by the Senate Finance Committee Report as examples of the type of frivolous objection to the tax laws that would warrant the imposition of this penalty:

... the penalty could be imposed against any individual filing a "return" showing an incorrect tax due, or a reduced tax due, because of the individual's claim of a clearly unallowable deduction, such as ... *a "war tax" deduction under which the taxpayer reduces his taxable income or shows a reduced tax due by that individual's estimate of the amount of his taxes going to the Defense Department budget ...*

S.Rep. No. 494, *supra*, at 278, 1982 U.S. Code Cong. & Ad.News at 1024. (emphasis added). By claiming a 46% reduction in her tax liability, Emily Kahn was reducing her taxable income or showing a reduced tax by her estimate of the amount of her taxes going to the Defense Department budget.

■■ We must stress, however, that Emily Kahn's sincerity and honesty are not in question here. We recognize that her political opposition to the use of her taxes for military spending is not in itself frivolous. Yet, section 6702 is neutral, requiring only that the taxpayer assert a position that is frivolous, *i.e.*, meritless, from the perspective of the tax laws. The civil penalty has been assessed against Emily Kahn because she claimed a war tax credit and her position that she is legally entitled to such a credit because of her views is a frivolous one. Neither the statute nor the legislative history suggest a basis for any exception based upon the taxpayer's subjective state of mind. The test for frivolousness is purely an objective one, under which we must evaluate the taxpayer's position in terms of its legal underpinnings. We therefore find that Emily Kahn's conduct satisfies the second element of the section 6702 test. Having determined that section 6702 applies, we must now consider whether the statute is constitutionally infirm.

### IV.

Emily Kahn's argument that her conduct, viewed in the context of symbolic

---

**3.** The Senate Finance Committee, in articulating the reasons for change, expressed its concern "with the rapid growth in deliberate defiance of the tax laws by tax protestors." It went on to note that "[t]he Internal Revenue Service had 13,600 illegal protest returns ... [and] the com- mittee believes that an immediate assessible penalty on the filing of protest returns will help deter the filing of such returns ..." S.Rep. No. 494, *supra*, at 277, 1982 U.S.Cong. & Ad.News at 1023–24.

speech, was protected by the first amendment, and therefore, not subject to civil penalties, must fail in light of this court's decision in *United States v. Malinowski*, 472 F.2d 850 (3d Cir.), *cert. denied*, 411 U.S. 970, 93 S.Ct. 2164, 36 L.Ed.2d 693 (1973).

In *Malinowski*, the defendant was convicted of tax fraud for willfully supplying false information on a withholding exemption certificate for the purpose of protesting military spending associated with the Vietnam war. The taxpayer was prosecuted for filing a form W–4 claiming 15 exemptions, having attached a letter explaining that he did so "to exercise greater control over the use of our taxes, especially that large portion that is used in war-making." *Id.* at 852. In rejecting the taxpayer's first amendment claim, we stated:

> [A]ppellant's First Amendment argument is but a suggestion that a member of society can be absolved of the responsibility for obeying a given law of the community, state or nation if he can prove a sincere, abiding, and good faith objection to the direct or indirect object of that law. Such a position represents a feeble effort to emasculate basic principles of civil disobedience, and, simply stated, is invalid.

*Id.* at 857.

We are not the first court to recognize that many respected Americans have engaged in civil disobedience as a form of protest against taxation for military spending. *See, e.g., United States v. Moylan*, 417 F.2d 1002, 1008–1009 (4th Cir.1969), *cert. denied*, 397 U.S. 910, 90 S.Ct. 908, 25 L.Ed.2d 91 (1970); *Drefchinski v. Regan*, 589 F.Supp. 1516, 1528 (W.D.La.1984). Henry David Thoreau, for instance, was imprisoned in 1845 for refusing to pay his poll taxes in protest of subsidizing the Mexican-American War. In this case, Emily Kahn has been penalized for including incorrect information on her 1040A form, also in protest of military spending. Like Thoreau, Ms. Kahn has chosen not to lend herself, through the payment of taxes to a wrong which she condemns. So too does

that choice carry with it a penalty imposed by law. No one has articulated this more clearly than Henry David Thoreau:

> I do not have to trace the course of my dollar, if I could, till it buys a man, or a musket to shoot one with—the dollar is innocent—but I am concerned to trace the effects of my allegiance. In fact, I quietly declare war with the State, after my fashion ...
>
> [I]f I deny the authority of the State when it presents its tax-bill, it will soon take and waste all my property, and so harass me and my children without end. This is hard ....
>
> [And yet i]t costs me less in every sense to incur the penalty of disobedience to the State than it would to obey. I should feel as if I were worth less in that case...
>
> I have paid no poll-tax for six years. I was put into jail once on this account ... and, as I stood considering the walls of solid stone ... I felt as if I alone of all my townsmen had paid my tax.

Henry David Thoreau, "Resistance to Civil Government" in Reform Papers; *The Writings of Henry D. Thoreau* 78–84 (W. Glick ed. 1973).

■ We therefore must disagree with the argument that because objections to the government's tax policies are lawful, Ms. Kahn cannot be punished for her violation of the internal revenue statute. This court's admonition in *Malinowski* rings true in the instant case:

> To urge that violating a federal law which has a direct or indirect bearing on the object of the protest is conduct protected by the 1st Amendment is to endorse a concept having no precedent in any form of organized society where standards of societal conduct are promulgated by some authority.

472 F.2d at 857. In substance, Ms. Kahn wants to rely on the privilege or the moral honor of civil disobedience without paying the price or penalty such disobedience necessarily incurs. But she can not seek immunization from the penalty—as Thoreau recognized—regardless as to what she may

perceive as the morality of her position. In exercising her right of civil disobedience, she may indeed be joining a legion of persons from Thoreau to Mohandas (Mahatma) Ghandi to Martin Luther King, Jr., who were committed to nonviolent civil disobedience. Nevertheless, she, like them, can be subjected to the rule of law for its infraction even though she may perceive the laws to be "unjust."

The issue of civil disobedience requires more than a simplistic analysis. Almost two decades ago, one of the task forces for the National Commission on the Causes and Prevention of Violence wrote:

### THE AMERICAN IDEAL

In a democratic society, dissent is the catalyst of progress. The ultimate viability of the system depends upon its ability to accommodate dissent; to provide an orderly process by which disagreements can be adjudicated, wrongs righted, and the structure of the system modified in the face of changing conditions. No society meets all these needs perfectly. Moreover, political and social organizations are, by their nature, resistant to change. This is as it should be, because stability—order—is a fundamental aim of social organization. Yet stability must not become atrophy, and the problem is to strike the proper balance between amenability to change and social stability.

National Commission on the Causes and Prevention of Violence, *Law and Order Reconsidered*, Report of the Task Force on Law and Law Enforcement 14 (1968). In this case Congress has attempted to strike the "proper balance between amenability to change and [economic] stability." Emily Kahn is assured her right to protest, but she cannot protest in the fashion she attempted on her income tax form. *See Welch, et al. v. United States*, 750 F.2d 1101 (1st Cir.1985).

So long as Emily Kahn provided the correct figures on her 1040A form, section 6702 would not have prohibited her protest, whether frivolous or legitimate, in a letter or other attachment. The civil penalty statute does not prohibit her letter of protest or her notation on the 1040A form except insofar as it reflects incorrect calculations. Thus, as in *Malinowski*, the taxpayer here submitted a form to the IRS which she knew contained incorrect information. In both cases the action amounts to civil disobedience which even if ethically justified, cannot excuse the taxpayer from the legal consequences of his or her actions. *See Moylan, supra*, 417 F.2d at 1008–09.

■ We are also convinced that Emily Kahn's attempts to distinguish *Malinowski* miss the mark. She first argues that unlike *Malinowski*, she made no false statements to the IRS because she disclosed the facts surrounding her protest in the letter accompanying her return. Whatever distinction there might be between the "fraudulent" statements made by Malinowski, and the "incorrect" statements of the taxpayer here is relevant only to the fact that Malinowski was prosecuted criminally, while here a civil fine was assessed. This distinction has no bearing on this court's reasoning in *Malinowski:* informing the IRS that the incorrect information has been furnished cannot negate the violation of the law.

It is also irrelevant that unlike *Malinowski*, the taxpayer has not unlawfully withheld any tax owed to the government, but has only requested that her refund be increased. The sole factual issue presented in this case is whether or not the taxpayer provided the IRS with substantially correct information on her 1040A form. We have stated previously that she did not.

The section 6702 penalty was imposed because the taxpayer's *conduct* failed to comply with the requirement of the tax laws that she properly report her tax liability, not because she expressed unpopular political views and not because the IRS was otherwise dissatisfied with the written statements made in connection with her plainly unallowable credit. Insofar as speech is concerned, an individual is free to

announce and publish his or her views as to the morality or wisdom of imposing income taxes to the same extent that he or she is free to announce and publish views as to the morality or wisdom of national defense spending. What is subject to sanctions, however is not the expression of such views, but the conduct of furnishing inaccurate information.

▆ The idea that speech may be non-verbal "expressive" acts has long been recognized by the Supreme Court. *See Stromberg v. California*, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931). Equally well-recognized is the notion that not all activity with an expressive component will be afforded first amendment protection. "[W]hen 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." *United States v. O'Brien*, 391 U.S. 367, 376, 88 S.Ct. 1673, 1678–79, 20 L.Ed.2d 672 (1968).

▆ Even if we were to view the underlying conduct as speech-related, we believe it is sufficiently outweighed by the broad public interest in maintaining a sound and administratively workable tax system. *See Fuentes v. Shevin*, 407 U.S. 67, 92, 92 S.Ct. 1983, 2000, 32 L.Ed.2d 556 (1972) (government's interest in collecting revenues is an important one). Congress enacted section 6702 in order to improve taxpayer compliance in light of the "rapid growth" in protest returns. The public interest served by section 6702 is of such a "high order" that an assertion of first amendment rights do not outweigh the necessity of maintaining a functional revenue system. *See United States v. Lee*, 455 U.S. 252, 260, 102 S.Ct. 1051, 1056, 71 L.Ed.2d 127 (1982). This interest has been found sufficiently compel-

ling to outweigh challenges to the administration of the tax laws based on the free exercise of religion. *See, e.g., United States v. Lee, supra; United States v. Grayson County State Bank*, 656 F.2d 1070 (5th Cir.1981), *cert. denied*, 455 U.S. 920, 102 S.Ct. 1276, 71 L.Ed.2d 460 (1982); *Lull v. Commissioner*, 602 F.2d 1166 (4th Cir.1979), *cert. denied*, 444 U.S. 1014, 100 S.Ct. 664, 62 L.Ed.2d 643 (1980); *Drefchinski, supra*. We hold that the operation of section 6702 does not deprive Emily Kahn of protected rights of free speech. *Accord Harper v. United States*, 587 F.Supp. 1056, 1058 (E.D.Pa.1984); *Drefchinski, supra*, 589 F.Supp. at 1524–26; *Franklet, supra; Bearden v. Commissioner*, 575 F.Supp. 1459, 1461 (D.Utah 1983); *Hummon v. United States*, 84–1 U.S.T.C. ¶ 9493 (S.D. Ohio 1984).

## V.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976); *Goss v. Lopez*, 419 U.S. 565, 572–73, 95 S.Ct. 729, 735–36, 42 L.Ed.2d 725 (1975); *Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). Emily Kahn alleges a deprivation of a "liberty" interest inasmuch as section 6702 impinged upon her freedom of expression and a deprivation of a "property" interest by virtue of the pre-payment of a portion of the fine. Therefore, we now consider her argument that sections 6702 and 6703 are unconstitutional because they permit the immediate assessment and collection of 15% of the penalty without a prior administrative hearing.[4] We must de-

---

**4.** The deficiency procedures of the Internal Revenue Code of 1954 sections 6211–6213, under which a taxpayer receives advance notice and an opportunity for Tax Court review prior to assessment do not apply to the section 6702 penalty. Section 6703(b) provides for district court review of the assessment upon payment of the 15% of the amount assessed and the filing of

a claim for refund. The balance of the penalty may not be collected until the final resolution of the district court proceeding, and any attempt to collect the remaining 85% may be enjoined. The burden of proving that a taxpayer is liable for the section 6702 civil penalty is on the government.

Section 6703 provides as follows:

termine whether the due process clause of the fifth amendment requires that *prior* to the imposition of a section 6702 civil penalty, a taxpayer be afforded an opportunity for an administrative hearing or whether the existing administrative procedures provide all the process that is constitutionally due.

It was Congress' intent to assess and impose the penalty for filing a frivolous income tax return immediately and then to permit the taxpayer to seek judicial review. The immediate assessment was considered necessary to maintain the integrity of the internal revenue system and to help deter the filing of non-responsive returns. S.Rep. No. 494, *supra,* at 277, U.S.Code & Cong.Ad.News at 1024. *See also Rowe v. United States,* 583 F.Supp. 1516, 1519 (D.Del.1984). Ms. Kahn asserts, however, that the administrative process denied her the basic right to be heard "at a meaningful time and in a meaningful manner."

Of course the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner but the concept is flexible, calling for procedural protection as dictated by the particular circumstance. *Mor-*

*rissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). In the tax context, the constitutionality of a scheme providing for only post-assessment judicial review is well-settled. Congress has long been empowered to enact legislation authorizing the Executive Branch to assess and collect taxes without prior administrative or judicial review so long as an adequate opportunity is afforded for a later judicial determination of liability. *See, e.g., Bob Jones University v. Simon,* 416 U.S. 725, 746–47, 94 S.Ct. 2038, 2050–51, 40 L.Ed.2d 496 (1974); *Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 611, 94 S.Ct. 1895, 1902, 40 L.Ed.2d 406 (1974); *Bull v. United States,* 295 U.S. 247, 259–260, 55 S.Ct. 695, 699–700, 79 L.Ed. 1421 (1935); *Phillips v. Commissioner,* 283 U.S. 589, 595, 51 S.Ct. 608, 611, 75 L.Ed. 1289 (1931). And, in considering prior due process objections to tax collection, the Supreme Court has shown special deference to the manner in which the IRS has collected the revenues of the government.

In *Phillips, supra,* 283 U.S. at 596–97, 51 S.Ct. at 611–12, the Court held that generally, summary proceedings to secure

---

§ 6703. Rules applicable to penalties under sections 6700, 6701, and 6702.

(a) Burden of Proof.—In any proceeding involving the issue of whether or not any person is liable for a penalty under section 6700, 6701, or 6702, the burden of proof with respect to such issue shall be on the Secretary.

(b) Deficiency procedures not to apply.— Subchapter B of chapter 63 (relating to deficiency procedures) shall not apply with respect to the assessment or collection of the penalties provided by sections 6700, 6701, and 6702.

(c) Extension of period of collection where person pays 15 per cent of penalty.—

(1) *In general.*—If, within 30 days after the day on which notice and demand of any penalty under section 6700, 6701, or 6702 is made against any person, such person pays an amount which is not less than 15 percent of the amount of such penalty and files a claim for refund of the amount so paid, no levy or proceeding in court for the collection of the remainder of such penalty shall be made, begun, or prosecuted until the final resolution of a proceeding begun as provided in paragraph (2). Notwithstanding the provisions of section 7421(a), the beginning of such pro-

ceeding or levy during the time such prohibition is in force may be enjoined by a proceeding in the proper court.

(2) *Person must bring suit in district court to determine his liability for penalty.* If, within 30 days after the day on which his claim for refund of any partial payment of any penalty under section 6700, 6701, or 6702 is denied (or, if earlier, within 30 days after the expiration of 6 months after the day on which he filed the claim for refund), the person fails to begin a proceeding in the appropriate United States district court for the determination of his liability for such penalty, paragraph (1) shall cease to apply with respect to such penalty, effective on the day following the close of the applicable 30-day period referred to in this paragraph.

(3) *Suspension of running of period of limitations on collection.*—The running of the period of limitations provided in section 6502 on the collection by levy or by a proceeding in court in respect of any penalty described in paragraph (1) shall be suspended for the period during which the Secretary is prohibited from collecting by levy or a proceeding in court.

prompt performance of tax obligations to the government are not constitutionally infirm where there is an opportunity for a later judicial determination of legal rights. "Where only property rights are involved, mere postponement of the judicial enquiry is not a denial of due process, if the opportunity given for the ultimate judicial determination of the liability is adequate." *Id.* This principle was recently reaffirmed in *Bob Jones University v. Simon, supra,* 416 U.S. at 746, 94 S.Ct. at 2050 (1974), where the Supreme Court held that a tax may be assessed without a prior hearing as long as the taxpayer can subsequently sue for a tax refund. The *Bob Jones University v. Simon* Court considered three factors: first, whether the taxpayer would be irreparably harmed by the predetermination levy, *id.* at 746, 94 S.Ct. at 2050; second, whether a "powerful government interest" existed in the protection of the administration of the tax system from premature judicial interference, *id.* at 747, 94 S.Ct. at 2051; and finally, whether post-assessment opportunities for review were available. *Id.* at 748, 94 S.Ct. at 2051.

However, as the Court itself has noted, in more recent years it has considered the extent to which due process requires an evidentiary hearing *prior* to the deprivation of some type of property interest *even if* such a hearing is provided thereafter. *Mathews, supra,* 424 U.S. at 333, 96 S.Ct. at 901. In *Mathews,* the Supreme Court set forth a more clearly delineated tri-partite test for determining whether the fifth amendment has been satisfied when the government is alleged to have denied due process. The inquiry considers three distinct factors: (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of such interest through additional procedural safeguards, and (3) the government's interest in additional adjudicative process. *Id.* at 335, 96 S.Ct. at 903.

█ Our reading of *Mathews* and other recent Supreme Court decisions in which additional process has been found to be necessary indicates that a showing of a likelihood of irreparable harm resulting from the lack of a pre-deprivation hearing is a private interest which countervails *any* public interest in streamlined administration. This showing has proven sufficient to compel further process when the government or private parties act to deprive and when the harm has threatened individuals or legal entities. *See North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601, 608, 95 S.Ct. 719, 723, 42 L.Ed.2d 751 (1975) ("probability of irreparable injury" sufficient to warrant pre-seizure hearing); *Goldberg v. Kelly,* 397 U.S. 254, 264, 90 S.Ct. 1011, 1018, 25 L.Ed.2d 287 (1970) (temporary deprivation of welfare payments may deprive recipient of "very means by which to live"); *Sniadach v. Family Finance Corporation,* 395 U.S. 337, 341–42, 89 S.Ct. 1820, 1822–23, 23 L.Ed.2d 349 (1969) (temporary deprivation of wages may "drive a wage-earning family to the wall"). Nor is this inquiry confined to the context of the disability-benefits-entitlement genre of decisions. Shortly after *Mathews,* the Court, in *Commissioner v. Shapiro,* 424 U.S. 614, 629, 96 S.Ct. 1062, 1071, 47 L.Ed.2d 278 (1976), by way of dictum, suggested that summary seizure of assets in tax proceedings when such seizure will result in irreparable injury, is a denial of due process. The Court's precise phraseology is as follows:

> This Court has recently and repeatedly held that, at least where irreparable injury may result from a deprivation of property pending final adjudication of the rights of the parties, the Due Process Clause requires that the party whose property is taken be given an opportunity for some kind of predeprivation or prompt post-deprivation hearing at which some showing of the probable validity of the deprivation must be made.

*Id.*

█ In light of these decisions, we hold that absent a showing of a likelihood of irreparable injury, a court must, in accordance with *Mathews,* balance the governmental interest in the existing process against the private interest that will be

affected and the probability of erroneous deprivation associated with that process.[5]

The government is quick to draw our attention to cases which have not followed this reasoning but which have upheld the summary assessment and collection, followed by later judicial review, in situations involving civil tax penalties against the claim that the procedure violates the taxpayer's rights under the due process clause. Nonetheless, we are convinced that the proper inquiry in this case is whether sections 6702(a)(1)(B) and 6703(c) are likely to impose irreparable injury upon taxpayers and, if not, whether governmental interests outweigh private interests and

whether the likelihood of erroneous deprivation is minimal.[6]

In this case, unlike *Shapiro*, Emily Kahn makes no factual allegation that the imposition of the tax penalty creates the risk of substantial irreparable injury. She has not alleged poverty nor has she asserted that economic distress will result from her immediate payment of the fine. It cannot be seriously contended that the tax-related penalty imposed by sections 6702 and 6703 threatens the kind of irreparable harm that a statute or regulation providing for summary deprivation of welfare or disability benefits does, especially when one recognizes that taxpayers as a class tend to be wealthier than the subclasses of welfare

**5.** The *Shapiro* Court pointed out that procedural due process analysis requires a careful weighing of the respective interests. 424 U.S. at 630 n. 12, 96 S.Ct. at 1072 n. 12 (*citing Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975)). Stating that the government's interest in collecting the revenues is an important one, *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), the *Shapiro* Court indicated that absent factual allegations of irreparable injury by the taxpayer, such an interest is sufficient to justify the seizure of assets without a pre-seizure hearing. The Court cautioned though that the governmental interest may not be sufficient to justify a seizure causing irreparable injury without at least prompt post-seizing inquiry.

**6.** The courts which have considered due process challenges in light of the imposition of the 15% penalty of sections 6702 and 6703 have unanimously held that these provisions provide all of the process that is constitutionally due in light of the minimal fee and the available post-assessment remedies. We find, however, that the courts' analyses have been sparse and divergent, failing to establish any uniform mode of review.

Three courts of appeals have held that the post-collection judicial review afforded by a refund suit satisfies the due process requirements of the Constitution. *See Martinez v. IRS,* 744 F.2d 71, 72 (10th Cir.1984); *Baskin v. United States,* 738 F.2d 975, 977 (8th Cir.1984); *Tavares v. United States,* 491 F.2d 725, 726 (9th Cir.1974) (considered in light of 26 U.S.C. § 6331). These decisions provide us with little guidance, however. Each summarily upheld post-collection judicial review on the basis of the Supreme Court's early ruling in *Phillips, supra.*

We also find the district court cases on point equally deficient in terms of offering a cogent analytical framework. For the sake of discussion, we divide them into three categories. The first group of district court decisions, including

two within this circuit, rely exclusively on the *Phillips* analysis. *See, e.g., Harper v. United States,* 587 F.Supp. 1056, 1059 (E.D.Pa.1984); *Rowe v. United States,* 583 F.Supp. 1516 (D.Del. 1984) (also considers *Bob Jones University v. Simon, supra.*); *Franklet v. United States,* 578 F.Supp. 1552, 1560 (N.D.Cal.1984); *Bearden v. Commissioner,* 575 F.Supp. 1459, 1461 (D.Utah 1983). The courts have sought a showing of irreparable harm, and in the absence of that showing, have determined that the post-assessment procedures afforded by the tax code were sufficient to guarantee taxpayer's fifth amendment due process rights. *See Franklet, supra,* 578 F.Supp. at 1560.

Another group of district courts employ the analysis initially developed by the Supreme Court in *Bob Jones University v. Simon, supra. See, e.g., Vaughn v. United States,* 589 F.Supp. 1528, 1532 (W.D.La.1984); *Karpowycz v. United States,* 586 F.Supp. 48, 52 (N.D.Ill.1984); *Scull v. United States,* 585 F.Supp. 956 (E.D.Va.1984); *Kloes v. United States,* 578 F.Supp. 270 (W.D. Wis.1984); *Rowe v. United States, supra,* at 1519; *Milazzo v. United States,* 578 F.Supp. 248, 252 (S.D.Cal.1984); *Googe v. Sec. of the Treasury,* 577 F.Supp. 758, 760 (E.D.Tenn.1983); *Gimelli v. United States,* 84–1 U.S.T.C. ¶ 9289 (E.D. La.1984). These courts have generally given great deference to the procedures of the government and have found that the penalty assessment and review procedure under Section 6702 constitutionally adequate. *See, e.g., Milazzo v. United States, supra,* at 252.

The final line of more recent district court cases have relied on the more precise *Mathews* three-part analysis. *See, e.g., Liljenfeldt v. United States,* 588 F.Supp. 966, 971, (E.D.Wis.1984) (also considers *Bob Jones* ); *Ueckert v. United States,* 581 F.Supp. 1262, 1265 (N.D.1984); *Betts v. United States,* 84–1 U.S.T.C. ¶ 9432 (D.Or. 1984). We believe this to be the better approach, particularly in light of *Shapiro*.

and disability recipients. *Cf. Goldberg v. Kelly, supra.* Thus, in this case, as in *Mathews,* the probability of irreparable harm associated with immediate deprivation is not a factor which indicates that private interests in more process outweigh governmental interests in providing no more process.

In the absence of the threat of irreparable harm, this court must next examine the private interest affected. As mentioned previously, Ms. Kahn asserts the deprivation of a "liberty" interest consisting of her first amendment right to freedom of expression. We have concluded, however, that her first amendment claim is not sound. Therefore, we look only to the alleged deprivation of property in this case, recognizing that the government is not immune simply because the amount of financial deprivation is only $75.00. The private interest affected is significant in terms of both time and money.[7] *Betts v. United States,* 84-1 U.S.T.C. ¶ 9432 at 84,077 (D.Or.1984).

The next factor to be considered under the *Mathews* analysis is the "fairness and reliability of the existing ... procedures, and the probable value, if any, of additional procedural safeguards." 424 U.S. at 343, 96 S.Ct. at 907. Here, the probability of erroneous deprivation appears to be small. Sections 6702(a)(1)(B) and 6703(c) impose a penalty when a tax return on its face indicates that a taxpayer's self-assessment is substantially incorrect and indicates that it is due to a position which is frivolous. The decision is sharply focused and easily documented unlike the necessity for consideration of a wide variety of information in welfare entitlement cases. Furthermore, no consideration of the veracity of witnesses or assertions is necessary, as is also true in the case of consideration of termination of welfare benefits. *See Goldberg v. Kelly, supra.* The return speaks for itself.

As observed in *Mathews,* "procedural due process rules are shaped by the risk of error inherent in the truthfinding process as applied to the *generality of cases,* not the rare exceptions." 424 U.S. at 344, 96 S.Ct. at 907 (emphasis added). Those persons reviewing returns would not be aided in determining whether a return violated the sections by a person-to-person discussion because the investigation required by the sections is facial. The possibility of erroneous deprivation then is not a reason for requiring more process in this case.

Looking at the flip-side of the coin, the government has clearly identifiable interests in providing no more process than it presently provides. Congress provided for a two-step appeals procedure following assessment which begins with a claim for refund with the IRS and then progresses to judicial review. 26 U.S.C. § 6703. The civil penalty here at issue differs from the other taxes and penalties that Congress and the courts have long permitted to be assessed without prior judicial review only in that (1) it is subject to both administrative and judicial review upon payment of only 15 percent of the total amount of the penalty, section 6703(c), and (2) if the administrative claim for refund is denied, the burden is then on the government in the district court proceeding to prove that the penalty is applicable. 26 U.S.C. § 6703(a). As the government points out, those two aspects of the statute differ from other immediately assessable civil penalties where the full amount of the tax or penalty must be paid prior to seeking review, and that the burden of proving nonliability for the tax or penalty is on the taxpayer.

As in *Mathews,* in this case, "experience with constitutionalizing of government procedures suggests that the ultimate additional cost in terms of money" associated with additional process "would not be insubstantial." 424 U.S. at 347, 96 S.Ct. at 909. The government, if required to provide more process, would in essence have

---

**7.** Recall that section 6703 requires that the taxpayer pay 15% of the penalty or $75.00 before the IRS will consider a claim for a refund. If the IRS denies the claim, as has been done here, the taxpayer must also pay the court filing fees for the opportunity to validate the claim of privilege. *See* note 5, *supra.*

to provide a modified version of the review process now provided *after* imposition of the penalty, *before* the fine is imposed. The additional costs would be particularly troublesome because they would be associated with one of the procedures by which the government collects its revenues. As the courts have held, "[t]he government has a powerful interest in the prompt collection of revenue." *Ueckert v. United States,* 581 F.Supp. 1262, 1265 (D.N.D. 1984); *See also Fuentes v. Shevin, supra; Drefchinski, supra; Harper, supra; Franklet, supra.* Thus, additional costs in this context, would not impose solely an economic burden, they could have an impact on how and how quickly the government can collect revenues. "At some point, the benefit of an additional safeguard to the individual affected by the administrative action and to society ... is outweighed by the [public] cost." *Mathews, supra,* 424 U.S. at 348, 96 S.Ct. at 909.

The compelling interest in the collection of revenue coupled with the congressionally expressed concern for maintaining the integrity of the revenue system and discouraging frivolous claims create a strong mandate for the constitutional validity of section 6702. In this case, the public interest outweighs the private interest.

■ We find therefore that due process does not require a pre-deprivation hearing and that Emily Kahn's assertion that the initial IRS review of claims for refund under section 6703(c) is constitutionally inadequate is without merit. Section 6703(c) allows for eventual full judicial review and the review need not precede deprivation or follow it immediately. Sections 6702 and 6703, therefore, satisfy the requirements of the fifth amendment.

## VI.

■ For the foregoing reasons, the decision of the district court will be affirmed.[8]

**8.** A second statutory argument raised by the taxpayer is that the penalty was assessed and collected in violation of the Freedom of Information Act provisions of the Administrative Procedure Act, 5 U.S.C. §§ 552 and 706(2)(D) (1982), because the IRS relied on unpublished interpretations. She also advances additional constitutional challenges: section 6702 violates the fifth amendment due process clause because (a) it is unconstitutionally vague and overbroad; and (b) the administrative process under section 6702 is unfair and inadequate in that it lacks meaningful notice and fails to give adequate reasons for denial. Furthermore, she argues that the penalty abridges her first amendment right to petition the government for redress of grievances.

As a matter of policy, we generally refuse to consider issues that are raised for the first time on appeal. *Tacynec v. City of Philadelphia,* 687 F.2d 793, 796 n. 2 (3d Cir.1982), *cert. denied,* 459 U.S. 1172, 103 S.Ct. 819, 74 L.Ed.2d 1016 (1983); *Newark Morning Ledger Co. v. United States,* 539 F.2d 929, 932 (3d Cir.1976); *Sachanko v. Gill,* 388 F.2d 859, 861 (3d Cir.1968). Although we relax this practice in those instances where a gross miscarriage of justice would occur, *see Hormel v. Helvering,* 312 U.S. 552, 557, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941), such is not the case here. The only issues expressly raised below were the statute's applicability and the taxpayer's first amendment right to freedom of expression. Not only did the taxpayer, in pursuing her cross-motion for summary judgment,

fail to raise these new theories, but she also failed to raise them in defense of the government's motion for summary judgment. *See* Plaintiff's Answer to Defendant's Motion to Dismiss Or, Alternatively, For Summary Judgment and Cross-Motion for Summary Judgment (E.D.Pa. No. 83–4406). Although we recognize that the taxpayer is represented by new counsel on appeal, nevertheless since the questions were not raised in the district court, they are not forthrightly before this court and cannot be presented or considered on this appeal.

We have, however, elected to waive this rule in order to consider the constitutional challenge aimed at the lack of a meaningful or fair hearing. *Tacynec, supra,* 687 F.2d at 796 n. 2; *See* V. *infra.*

While we find it aggravating to have so many of these issues raised for the first time in this case on appeal, we nevertheless sense that many of these issues are being urged in a variety of somewhat similar cases throughout this circuit, some of which are probably on appeal. For the latter reason alone, we make the following observations: Even if we were to entertain Ms. Kahn's other contentions, she would face substantial obstacles to prevailing on these claims. We believe they are totally devoid of merit. Emily Kahn argues that the IRS's failure to publish interpretive guidelines for section 6702 in the Federal Register violates 5 U.S.C. § 552(a)(1)(D), which provides:

(a) Each agency shall make available to the public information as follows:

(1) Each agency shall separately state and currently publish in the Federal Register for the guidance of the public—

\* \* \* \* \*

(D) substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency

The statute further provides that "a person may not in any manner ... be adversely affected by, a matter required to be published in the Federal Register and not so published." 5 U.S.C. § 552(a)(1).

Lower courts have held that the assessment of this civil penalty is only the direct application of the plain terms of the statute supported by unambiguous legislative history. *Drefchinski v. Regan,* 589 F.Supp. 1516, 1522 (W.D.La.1984); *Karpowycz v. United States,* 586 F.Supp. 48, 52 (N.D.Ill.1984); *Hummon v. United States,* 84-1 U.S.T.C. ¶ 9493 (S.D.Ohio 1984); *Scull v. United States,* 585 F.Supp. 956, 961 (E.D.Va.1984); *Franklet v. United States,* 578 F.Supp. 1552, 1558-1559 (N.D.Calif.1984). No administrative guidelines were necessary for Emily Kahn to have reason to know that her actions would subject her to the statutory sanction. Moreover, even if such guidelines existed, publication is not required when the rules are interpretive and not substantive, *i.e.* only a clarification or explanation of existing laws or regulations is expressed and no significant impact upon any segment of the public results. *Powderly v. Schweiker,* 704 F.2d 1092, 1098 (9th Cir.1983); *Anderson v. Butz,* 550 F.2d 459 (9th Cir.1977). As one district court has observed, no clarification or explanation of section 6702 is needed since it would only reiterate Congress' express intent that "war tax" reductions be considered "frivolous." Thus, such interpretations would have no significant impact on the substantive rights of any segment of the public. *Franklet, supra,* 578 F.Supp. at 1558 (*quoting* Powderly, *supra,* 704 F.2d at 1098).

As to her due process charge of vagueness, Emily Kahn takes the position that section 6702 is void on its face for vagueness because it neither defines its coverage "with sufficient definiteness that ordinary people can understand what conduct is prohibited" nor does it do so "in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983); *see also Aiello v. City of Wilmington, Del.,* 623 F.2d 845, 850 (3d Cir. 1980). Her argument is that the statute's key terms, "indicates", "self-assessment", "substantially incorrect", "position" and "frivolous" are so vague as to give no warning and no standards for the penalty's application.

As a threshold matter, it was incumbent upon Emily Kahn to prove that she was unable to deduce what was allowed, and what was prohibited by the statute. "All due process requires is a definition of the infraction 'in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with.'" *Franklet, supra,* 578 F.Supp. at 1557 (*quoting Civil Service Commission v. Letter Carriers,* 413 U.S. 548, 578-79, 93 S.Ct. 2880, 2897, 37 L.Ed.2d 796 (1973)). There is no question that the taxpayer in this case knew, or at least suspected, that she was breaking the law when she claimed a war tax credit on her 1040A form. In fact, in the letter she sent accompanying her income tax return she stated: "You may choose to prosecute me or confiscate my money." App. at A.9. An ordinary person generally knows or has reason to know whether the reductions he or she proposes are "clearly allowable," *see* Senate Finance Comm., Tax Equity and Fiscal Responsibility Act of 1982, S.Rep. No. 494, 97th Cong., 2nd Sess. 278, *reprinted in* 1982 U.S.Code Cong. & Ad.News 781, 1024. Therefore, we find that Emily Kahn did not meet this threshold test. *Accord Liljenfeldt v. United States,* 588 F.Supp. 966, 973 (E.D.Wis.1984); *Harper v. United States,* 587 F.Supp. 1056, 1059 (E.D.Pa.1984); *Scull v. United States,* 585 F.Supp. 956, 960-61 (1984); *Rowe v. United States,* 583 F.Supp. 1516, 1520 (D.Del.1984); *Kloes v. United States,* 578 F.Supp. 270, 273 (W.D.Wis.1984); *Franklet, supra,* 578 F.Supp. at 1557; *Gimelli v. United States,* 84-1 U.S.T.C. ¶ 9289 at 83,623 (E.D.La. 1984).

Moreover, even assuming the statute to be vague on its face, arguably the vagueness is cured by reference to the pre-enactment legislative history in that a "war tax" credit or deduction is expressly referred to by the Senate Finance Committee as an example of the type of frivolous objection that brings section 6702 into play. *See* S.Rep. No. 494, *supra,* at 277, 1982 U.S.Code Cong. & Ad.News at 1024.

Emily Kahn also states that the IRS notice informing her of the penalty deprived her of due process. We disagree. The notice recited the assessment of the penalty, the taxable year for which it was assessed, and the statutory basis for assessment. Due process requires no more. *Accord Harper, supra,* 587 F.Supp. at 1059; *Franklet, supra,* 578 F.Supp. at 1559.

Finally, as to the first amendment contention that section 6702 violates Ms. Kahn's right to petition, our response is simply that failure to comply with the federal tax laws cannot be excused on the ground that the taxpayer wished to communicate political grievances to the IRS. The war tax protestor's appropriate remedy lies in direct participation in the collective political process. Thus, "[p]enalizing an individual who seeks to claim frivolous tax deductions in no way hinders that individual from complaining to any government official about the way those taxes are spent." *Franklet, supra,* 578 F.Supp. at 1556 (*quoting Cup v. Commissioner,* 65 T.C. 68, 83-84 (1975), *aff'd,* 559 F.2d 1207 (3d Cir.1977)). *See also Drefchinski, supra,* 589 F.Supp. at 1526-1527; *Vaughn v. United States,* 589 F.Supp. 1528, 1533 (W.D.La.1984); *Scull, supra,* 585 F.Supp. at 961; *Milazzo v. United States,* 578

F.Supp. 248, 253 (S.D.Calif.1984); *Bearden v. Commissioner,* 575 F.Supp. 1459, 1461 (D.Utah 1983).