T.C. Memo. 2007-91

UNITED STATES TAX COURT

SAM E. SCOTT, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2537-05L.                    Filed April 17, 2007.

Sam E. Scott, pro se

<u>John F. Driscoll</u>, for respondent.

MEMORANDUM OPINION

GERBER, <u>Judge</u>:  In a January 11, 2005, Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330) (Notice) respondent notified petitioner that the filing of the Notices of Federal Tax Lien (NFTLs) with the Panola County Chancery Clerk's Office in Batesville, Mississippi, for petitioner's 1991 tax liability was sustained.  In a timely petition, petitioner posed several generalized reasons why he

believed that there was an abuse of discretion and why respondent should not be allowed to proceed with collection. The sole issue for our consideration is whether respondent's determination to file NFTLs relating to petitioner's 1991 tax liability was an abuse of discretion.

This case was submitted fully stipulated[1] pursuant to Rule 122,[2] and the parties' agreed facts and accompanying exhibits are incorporated herein by this reference.

## Background

At the time his petition was filed, petitioner resided in Hazlehurst, Mississippi. This Court rendered an opinion deciding the merits of petitioner's 1991 income tax deficiency, Scott v. Commissioner, T.C. Memo. 1997-507, and on June 19, 1998, a decision was entered setting forth the amount of said deficiency. Petitioner appealed to the Court of the Appeals for the Fifth Circuit, and this Court's decision was affirmed (in an unpublished opinion) on June 3, 1999. See Scott v. Commissioner, 182 F.3d 915 (5th Cir. 1999).

---

[1] This case was submitted fully stipulated at the Trial Session of the Court held at Jackson, Mississippi, on Feb. 6, 2006. This matter was submitted for disposition by order of the Chief Judge to Judge Joel Gerber on Feb. 13, 2007.

[2] Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code, as amended and in effect for the period under consideration.

Pursuant to this Court's decision, respondent assessed a $73,053 deficiency in income tax, a $12,313 delinquency addition to tax under section 6651(a)(1), a $14,611 accuracy-related penalty under section 6662, and $72,080.39 of accrued interest. As of January 31, 2006, the outstanding balance due on petitioner's 1991 tax liability, including penalties and interest to that date, was $288,028.05.

During the period October 22, 2000, through mid-January 2004, respondent offset an aggregate amount of $772.64 against petitioner's outstanding 1991 tax liability. The offsets were the following tax refunds claimed by petitioner and his wife on their jointly filed returns: $56.48 (claimed for 1999), $600.00 (claimed for 2000), $112.96 (claimed for 2001), and $3.20 (claimed for 2002).

On or about July 15, 2004, petitioner was in touch with Revenue Officer Beth McCullough who had been assigned to collect petitioner's outstanding 1991 tax liability. Petitioner provided Ms. McCullough with a letter along with a seven-page memorandum, dated July 15, 2004, which set forth background in support of petitioner's request that respondent not file an NFTL with respect to his 1991 tax liability. In the memorandum petitioner explained that he was 67 years old, had practiced law in Jackson, Mississippi, for 43 years, and had a good reputation. Petitioner also outlined the status of his health explaining that he had

heart blockage issues, high blood pressure, a malignant tumor, which was under treatment, and motor problems with his left leg requiring use of a walker.

Petitioner also outlined his financial condition in the memorandum explaining that his only steady income was a monthly $1,727 Social Security payment and that his professional income from law practice was greatly reduced. He listed monthly expenses totaling $5,254.81 and various outstanding liabilities, including credit card debt, bank loans, and mortgages totaling approximately $422,000. His outstanding 1991 income tax liability was not included in the $422,000 amount. Petitioner reflected assets exceeding liabilities by an amount less than $100,000, after considering his tax liabilities. He proposed a plan to refinance his assets in order to make an offer-in-compromise and to delay filing of the NFTLs, which petitioner believed would "destroy" his credit. Alternatively, he stated that if respondent filed the NFTLs and pursued collection, petitioner would be "driven" into bankruptcy.

Thereafter, respondent, by certified mail, sent petitioner Notices of Federal Tax Lien Filing and Your Right To a Hearing Under IRC 6320, dated August 4 and August 10, 2004, which is also denominated as a "Letter 3172", along with three Notices of Federal Tax Lien, all of which concerned petitioner's 1991 tax liability. The NFTLs were filed on August 6, 2004. On or about

September 3, 2004, petitioner timely filed a Form 12153, Request for a Collection Due Process Hearing, listing the following 13 grounds for his disagreement with respondent's collection actions: (1) Appropriateness of collection actions; (2) collection alternatives; (3) impairment of spouse's rights; (4) amount of tax; (5) amount of interest; (6) amount of penalty; (7) inadequacy of notice; (8) due process rights; (9) equal protection rights; (10) other points to be made at hearing; (11) adequacy of Appeals rights; (12) timeliness of notice of lien; and (13) improper filing of lien.

Petitioner's request for a hearing was assigned to respondent's Appeals Officer Horace Grantham, who sent a September 22, 2004, letter to petitioner, tentatively, to schedule an October 5, 2004, hearing and requesting petitioner, within 10 days, to advise of his availability for such hearing. By that same letter, Appeals Officer Grantham forwarded a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, on which petitioner was to provide information to enable the Appeals officer to consider collection alternatives. Petitioner sent a letter, dated September 27, 2004, to the Appeals officer requesting that the October 5, 2004, date be rescheduled to a date after October 26, 2004. The Appeals officer replied by a September 29, 2004, letter rescheduling a hearing for October 27, 2004. The hearing was

again rescheduled for November 3, 2004, and on November 1, 2004, petitioner called and requested a further rescheduling to November 9, 2004.  On November 9, 2004, petitioner telephoned Appeals Officer Grantham and indicated that he had suffered an injury, and the hearing was finally scheduled for November 16, 2004.

The hearing was held on November 16, 2004, and the following general topics were discussed:  (1) The Appeals process and the then outstanding amount of petitioner's 1991 tax liability; (2) collection alternatives, such as offers-in-compromise and installment payment plans, were limited due to the fact that petitioner's net worth was sufficient to pay his entire 1991 tax liability; (3) the possibility of respondent's collecting the entire amount of the 1991 tax liability from petitioner's equity in a retirement account, and a possible tax advantage from coordination of levies by respondent on that account; (4) petitioner declined any additional discussion of his 13 items of disagreement which he had listed on the Form 12153, but he reserved the opportunity to detail his disagreement in a subsequent writing; (5) petitioner advised that he would consult with his certified public accountant (C.P.A.) to determine what was in his best interest and notify Appeals Officer Grantham by the end of the week.

Appeals Officer Grantham concluded that petitioner's net worth was sufficient to satisfy the outstanding 1991 tax liability mainly due to the $308,000 equity in a retirement account, which was subject to loans of $36,000. The day after the hearing, Appeals Officer Grantham spoke with Revenue Officer McCullough to make arrangements for a possible levy on petitioner's retirement account.

On November 19, 2004, Appeals Officer Grantham received, by facsimile, a letter with an attachment from petitioner supplementing the matters discussed at the November 16, 2004, hearing. In the November 19, 2004, facsimile, petitioner reiterated his health-related difficulties, and he also pointed out that the tax year involved was 1991 so that 13 years of interest had accrued which represented 75 percent of the outstanding balance due. Petitioner also emphasized that he had a good record as a taxpayer during the past 43 years and that cutting off alternative methods for resolution was not appropriate. Petitioner advanced Mississippi law in support of his position that his wife had a right to occupy the "marital domicile", and the filing of a lien would impinge on that right and also lessen the value of the realty without providing respondent with additional opportunities to collect. Petitioner also complained that respondent had "appropriated" joint tax refunds to satisfy part of his individual 1991 tax liability.

Petitioner also attempted to question whether the section 6651(a)(1) addition to tax and the section 6662 penalty were overstated.

In the November 19, 2004, facsimile petitioner also contended that the outstanding amounts of the addition to tax and penalty reflected on the NFTLs exceeded the 25 percent and 20 percent amounts, respectively, set forth in sections 6651(a)(1) and 6662 and, therefore, were invalid.  Finally, petitioner contended that the hearing did not provide him with either substantive or procedural due process because:

1.  There are no standards or procedures for conduct of the hearing.

2.  There is no provision for making a written record of the hearing.

3.  No burden of proof is provided, nor is taxpayer informed as to what is grounds for relief.

4.  The presiding officer at the hearing is employed by the IRS, an adversary party, and therefore cannot be impartial for due process purposes.

5.  No evidence is required or presented by IRS to establish that due process rights have been afforded.

6.  The hearing is a post-deprivation hearing which does not comply with due process requirements. There is no due process requirement for filing the lien.

7.  Taxpayer was not allowed at the hearing to present an offer in compromise.  The provisions of [section] 6631 require that every IRS notice that includes an amount of interest required to be paid by the taxpayer must include a detailed computation of the interest charged.  This was not done in this case as is demonstrated by the IRS's notices.

Petitioner sent no further communications to Appeals Officer Grantham, and, accordingly, no further information was advanced about any particular collection alternative. On January 11, 2005, the Notice was sent to petitioner, and he timely instituted this proceeding on February 9, 2005. In essence, the Notice explained that because a review of petitioner's assets revealed that he had sufficient equity to pay the tax liability in full, there was no prospect for the consideration of an offer-in-compromise. The Notice also indicated that petitioner stated that he would consult with his C.P.A. and advise respondent about ways to gain a tax advantage from coordination of levies, but petitioner failed to provide this information. Also reiterated in the notice of determination, was that petitioner had declined to discuss "the issues * * * [he] raised in * * * [his] request for a hearing". The Notice concluded with the determination that the filing of the NFTLs with the Panola County Chancery Clerk's Office in Batesville, Mississippi, for petitioner's 1991 income tax liability was sustained.

In addition to the above Notice, respondent sent the following Letters to petitioner regarding his 1991 tax liability:

1. Letter CP-14: Sent on or about November 9, 1998, which normally contains payment history and contact telephone numbers.

2.  Letter CP-501:  Sent on or about December 28, 1998, which contained tax liability information and contact telephone numbers.

3.  Letters CP-503:  Sent on or about February 1, 1999, and October 28, 2002, which contained tax liability information and contact telephone numbers.

4.  Letters CP-504:  Sent on or about March 8, 1999, April 12, 1999, September 4, 2000, and July 7, 2003, which contained tax liability information and contact telephone numbers.

5.  Letter 3174:  Sent on or about August 29, 2003, by Internal Revenue Officer Beth McCullough advising that if the 1991 tax balance due were not paid by September 12, 2003, an NFTL would be filed.

6.  Letter 3172:  Sent on August 4, 2004, by Revenue Officer McCullough notifying of the filing of an NFTL for petitioner's 1991 tax liability.

## Discussion

Petitioner, who had practiced law in Mississippi for 43 years, represents himself in this proceeding where, for various reasons, he contends there was an abuse of discretion in respondent's filing of an NFTL.  On several occasions, petitioner

has listed 13 broad contentions[3] which he believes support his assertion that there has been an abuse of discretion. Petitioner, however, in this shotgunlike approach has not provided meaningful detail or legal support for his contentions, either to respondent or to the Court.[4]

Petitioner vigorously pursued respondent's determination of his 1991 income tax deficiency, and he was unsuccessful in this Court and in his Appeal to the Court of Appeals for the Fifth Circuit. Scott v. Commissioner, T.C. Memo. 1997-507, affd. 182 F.3d 915 (5th Cir. 1999). Accordingly, petitioner may not contest the existence or amount of the underlying tax liability because he received a notice of deficiency, and he had a full opportunity to dispute the underlying tax liability. Sec.

---

[3] The broad contentions include:
(1) Appropriateness of collection actions; (2) collection alternatives; (3) impairment of spouse's rights; (4) amount of tax; (5) amount of interest; (6) amount of penalty; (7) adequacy of notice; (8) due process rights; (9) equal protection rights; (10) other points to be made at hearing; (11) adequacy of Appeals rights; (12) timeliness of notice of lien; and (13) improper filing of lien.

[4] Petitioner's pleading, submissions to respondent, and his legal briefs filed with the Court are terse and contain broad platitudes without meaningful rationale or support in statutes, regulations or case precedent. We do not hold petitioner to a higher standard because of his extensive legal career, but simply note that he had the ability or capacity to provide the Court with legal support, if any exists, for his allegations or assertions.

6330(c)(2); <u>Sego v. Commissioner</u>, 114 T.C. 604, 610 (2000); <u>Goza v. Commissioner</u>, 114 T.C. 176, 180-181 (2000).  Moreover, petitioner would also be barred from litigating a second time his 1991 income tax liability based on the principles of res judicata.

Our consideration in this case is therefore limited solely to the question of whether there was an abuse of discretion in respondent's determination to proceed with collection action and in particular to file an NFTL.  Where the underlying tax liability is not at issue, the Court will review the Appeals officer's determination for abuse of discretion.  <u>Sego v. Commissioner</u>, <u>supra</u>.  In this case, petitioner's 1991 tax liability was assessed in accord with the decision of this Court. Property and rights to property of petitioner become subject to a lien arising in favor of the United States at the time of the assessment because petitioner failed to pay the tax liability after notice and demand for payment.  Secs. 6321 and 6322.  The lien is not entitled to priority[5] with respect to the claims of certain other creditors of petitioner until an NFTL is filed. Sec. 6323(a).

As of January 31, 2006, petitioner's outstanding balance due for his 1991 tax liability, including penalties and interest to

---

[5] "Priority" used in this context refers to respondent's claim or right to payment vis-a-vis other creditors' claims against petitioner's property or rights to property.

that date, was $288,028.05. At the hearing afforded to petitioner, however, it was determined that his equity in assets, including a retirement account which approximated the amount of the tax liability, exceeded his outstanding income tax liability. For that reason, the Appeals officer did not believe there was a prospect for the consideration of an offer-in-compromise, although the Appeals officer was open to working out a schedule to levy on the retirement account in a manner that would minimize the tax and/or penalty burden on retirement account distributions used to pay the outstanding tax liability.

Many of petitioner's contentions in support of his argument that there was an abuse of discretion have their roots in respondent's failure to consider and/or agree to collection alternatives or to delay in filing an NFTL so as to lessen the detrimental effect on petitioner or his wife. We proceed to evaluate petitioner's contentions.

I.  Whether Petitioner Was Entitled to a Hearing Prior to Respondent's Filing an NFTL

Petitioner has contended that he was not afforded due process because respondent did not provide him with a hearing prior to filing an NFTL. See Beery v. Commissioner, 122 T.C. 184, 190 (2004). Section 6320(a) provides for notification of the filing of an NFTL in writing not more than 5 business days after the date of the filing of an NFTL. The express statutory language does not entitle petitioner to a hearing prior to the

filing of the NFTL.  Under section 6320(a), respondent may file the NFTL before notifying petitioner or providing him with a hearing.  We note, however, that petitioner did discuss his outstanding liability and the potential for the filing of an NFTL with respondent's collection officer prior to the filing.

As a general matter

> The right of the United States to collect its internal revenue by summary administrative proceedings has long been settled.  Where * * * adequate opportunity is afforded for a later judicial determination of the legal rights, summary proceedings to secure prompt performance of pecuniary obligations to the government have been consistently sustained.  [Fn. ref. omitted.]

Phillips v. Commissioner, 283 U.S. 589, 595 (1931);[6] see also United States v. Natl. Bank of Commerce, 472 U.S. 713 (1985).

The statutes we consider provide for prompt notice after the collection action (filing the NFTL) and for a hearing and judicial review.  Secs. 6320, 6330.  Therefore, petitioner's contention that there was a lack of due process must fail.

Petitioner also contended that respondent did not provide him with a timely notice under section 6320 (sent to his last known address within 5 business days of the NFTL filing), but the record reflects that respondent met the time requirement and

---

[6] We note that petitioner, unlike the taxpayer in Phillips, litigated his liability on the merits before a lien arose and in that sense was afforded a prior judicial determination of his legal rights.

provided petitioner with a hearing in response to his disagreement with the collection action.

    II.   <u>Whether Respondent Failed To Adopt or Employ Uniform Rules or Procedures for the Hearing Pursuant to Sections 6320 and/or 6330; Whether the Administrative Procedures Act Applies to the Hearings; and Whether It Is Respondent's Obligation To Record the Hearing</u>

Petitioner makes the vague argument that no uniform rules or procedures existed for the conduct of the administrative hearing and/or that he was not apprised of same.  Respondent counters that there were available to petitioner, in addition to the above-referenced statutes, section 301.6320-1, et seq., Proced. & Admin. Regs., and section 301.6330-1, et seq., Proced. & Admin. Regs., which provide rules and procedures for the hearing and the related process.  We agree with respondent and find petitioner's contention to be without merit or substance.

Petitioner also contends that the provisions of the Administrative Procedure Act, 5 U.S.C. sec. 551-557 (1994) should apply to the sec. 6320/6330 hearing.  Respondent has stated in procedural regulations that a hearing under sections 6320 and 6330 is not under the formal hearing provisions of the Administrative Procedure Act.  See sec. 301.6320-1(d)(2), Q&A-D6, Proced. & Admin. Regs.; sec. 301.6330-1(d)(2), Q&A-D6, Proced. & Admin. Regs.  Petitioner complained that the hearing was not recorded by respondent, but petitioner did not seek, nor was he

denied the opportunity, to record the hearing.[7]  In <u>Davis v. Commissioner</u>, 115 T.C. 35, 41-42 (2000), we emphasized that the hearing process is informal and does not require testimony under oath or certain other formalities.  Petitioner does not raise any other specific or particular aspect of the Administrative Procedure Act that should have been applied, and, in any event, he did not say in what manner it would have made a difference in this case if such procedures had been followed.  Accordingly, we find no merit in these contentions.

III. <u>Whether Respondent Was Required To Provide Petitioner With Specific Information About the Rules, Regulations, and or Procedures Governing Hearings; and Whether There Is Any Limitation on Respondent's Use of Information Gained at the Hearing To Further Subsequent Collection of the Tax</u>

Although contending that respondent is required to provide taxpayers with specific information about the rules, regulations, and/or procedures governing hearings, petitioner has not cited any statute, regulation, or case that mandates such a requirement.  Respondent contends that no such requirement exists.  Section 6331(d)(4) requires the Internal Revenue Service to inform a taxpayer in nontechnical terms of the administrative appeal rights available with respect to a levy.  Similar obligations, respecting liens, as well as levies, are imposed by

---

[7] At the time of petitioner's hearing, this Court had decided that taxpayers, in certain circumstances, have the right to record a sec. 6320/6330 hearing.  <u>Keene v. Commissioner</u>, 121 T.C. 8 (2003).

regulation sections 301.6320-1(a)(2) Q&A-A10 and 301.6330-1(a)(3) Q&A-A7.  In that regard, petitioner was sent Publication 1660, with the August 4, 2004, Letter 3172, Notice of Federal Tax Lien Filing and Your Right To A Hearing Under IRC 6320.  Publication 1660 describes the Appeals rights available to taxpayers, along with mention of hearing issues provided for in sections 6320(c) and 6330(c).  In addition, the Appeals officer explained the hearing process to petitioner and encouraged him to provide additional information or issues.  Accordingly, there is little for petitioner to complain about in the setting of this case. Further, it has been held that an Appeals officer's failure to provide a taxpayer with a written set of all rules, regulations, and procedures applying to section 6320 and section 6330 hearings was not an abuse of discretion.  See Davis v. Commissioner, supra at 41-42; Lindsay v. Commissioner, T.C. Memo. 2001-285; see also Wylie v. Commissioner, T.C. Memo. 2001-65.

With respect to whether respondent can use information obtained at a section 6320/6330 hearing to advance subsequent collection, again petitioner did not provide any statute, regulation, or precedent that would prevent respondent from doing so.  Respondent contends that he is not so limited, but that he was not aware of any such use in this case.  We agree with respondent that no such limitation has been shown to exist.

IV. <u>Whether Respondent Complied With the Notice Requirements for the Filing of a Notice of Federal Tax Lien, and Whether the Appeals Officer Was Required To Provide Petitioner With All Documents Maintained by Respondent With Respect to Him</u>

Petitioner, on brief, makes the barebones argument that respondent "must comply with notice requirements when filing a lien." To make his point, petitioner, on brief, argues that "Notice of the filing of the lien was not given within five days in that the liens were filed on August 3, [sic]2005 and the notice was not dated until August 10, [sic]2005." In response, respondent points out that the NFTLs were actually filed with the County Chancery Courts on August 6, 2004, and the Notices sent to petitioner were mailed on August 4 and August 10, 2004. The record bears out respondent on this point. We again note petitioner's shotgunlike approach and his propensity to grasp at straws without providing any meaningful support for his position.[8]

Petitioner contends that the Internal Revenue Service "must provide a taxpayer with documents related to him or her in its file." Here again, this unsupported contention is without specificity or distinction. Respondent sent numerous notices, publications, and other materials to petitioner and provided him with summaries, Certificate of Assessments and Payments, Forms 4340, with respect to his 1991 tax account. There is no other

---

[8] We also note that petitioner failed to acknowledge that the notice period is 5 <u>business</u> days, which even under petitioner's flawed approach could have explained the difference.

specific indication by petitioner as to the information or documents he was or was not provided either prior to or during the hearing process.

The Appeals officer used Forms 4340 to verify the assessments. We have held that "it was not an abuse of discretion for the Appeals officer to use Forms 4340 for purposes of complying with section 6330(c)(1)." Nestor v. Commissioner, 118 T.C. 162, 166 (2002); Davis v. Commissioner, supra at 41; Lindsay v. Commissioner, T.C. Memo. 2001-285.

Section 6330(c)(1) does not require the Appeals officer to provide taxpayers with a copy of a document verifying that the requirements of any applicable law or administrative procedure have been met. Section 301.6330-1(e)(1), Proced. & Admin. Regs., requires that the Appeals officer obtain verification before issuing the determination; it does not state that he or she must provide it to the taxpayer. Further, there is no legal requirement that the Appeals officer provide a taxpayer with copies of the delegations of authority, assessment records, or other underlying documents maintained by respondent with respect to a taxpayer's account. Nestor v. Commissioner, supra at 166. Accordingly, the Appeals officer in this case sufficiently verified the 1991 tax assessments and was not required to provide more.

V.  Whether the Penalties and Interest Assessed Against Petitioner Were Excessive

Petitioner, in his brief, makes a terse reference to the fact that the interest and penalties are excessive.  In his November 19, 2004, facsimile to Appeals Officer Grantham, petitioner indicated that the tax year was then 13 years old and that the income tax liability was only 25 percent of the total, whereas the penalties and interest represented 75 percent of the total.  He also bemoans the fact that the original 25-percent addition to tax and 20-percent penalty assessed under sections 6651(a)(1) and 6662, respectively, continue to increase in that they are interest sensitive.  Petitioner contends that the 25 percent and 20 percent amounts set forth in the respective statutes are intended to be limitations on the maximum amount of penalty and that the increased amounts are "excessive".

As already discussed, petitioner was not entitled to raise the underlying merits of the tax and penalties for 1991 because he received a statutory notice of deficiency and litigated the merits of same.  See sec. 6330(c)(2)(B).  Petitioner has not shown that the amount of tax, penalties, or interest are incorrectly computed.[9]  Instead, he broadly claims they are

_____

[9] It is clear that the addition to tax and penalty were assessed in amounts that coincided with the dollar amounts contained in our decision in the deficiency proceeding. Petitioner is barred from contesting that assessment under the principle of res judicata as well as sec. 6330(c)(2)(B).

(continued...)

excessive without providing any statutory, regulatory, or case precedent in support of his position.  To the extent that petitioner was entitled to question the amount of the penalties and interest included in the outstanding 1991 tax liability, he has not provided sufficient information from which we could conclude that respondent's assessed amounts are in error.

VI.   Whether There Was Compliance by Respondent With Sections 6631 and 6751

Sections 6631 and 6751, which were enacted as part of the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, 112 Stat. 685, requires the Secretary to include certain information on any notice to a taxpayer of liability for interest or for a penalty.  Sections 6631 and 6751 were effective for notices sent to taxpayers after December 31, 2000, which date was extended to June 30, 2001, by the Community Renewal Tax Relief Act of 2000, Pub. L. 106-554, section 302(b) and (c), 114 Stat. 2763A-632.  In addition, sections 302(b) and (c) of the Community Renewal Tax Relief Act of 2000 also provided that the requirements of sections 6631 and 6751(a) would be "treated as met" if any notice issued after June 30, 2001, and before July 1,

[9](...continued)
Although petitioner is not barred from contesting whether the interest accumulated on the assessment was correctly computed by respondent, he has not made that argument.  See Urbano v. Commissioner, 122 T.C. 384, 392-393 (2004).  Petitioner's argument here is that accumulated interest on the addition to tax and penalty causes those amounts to exceed the statutorily prescribed percentages of 25 and 20 percent, respectively.

2003, contained a telephone number at which the taxpayer could request a copy of assessments and payment histories including interest and penalties.

In this case, 10 notices were sent to petitioner with respect to his 1991 tax liability.  Six of those notices were sent prior to the extended June 30, 2001, effective date.  One of the notices sent after June 30, 2001, contained telephone numbers and is treated as meeting the requirements of sections 6631 and/or 6751(a).  The remaining three notices did not meet the interest computation requirements of section 6631.

The question we must consider is whether respondent's failure to comply with the section 6631 computation of interest requirements on 3 of 10 notices has any effect on the validity or effectiveness of the 1991 assessment and/or the NFTLs filed by respondent.  The statute requires that respondent include a computation of the amount of interest on each notice, but there is no indication of any consequence or remedy for failure to do so.

In the context of the review of an administrative act or proceeding, this Court has utilized the "theory of detrimental reliance" and considered the "rule of prejudicial error" (otherwise known as the doctrine of harmless error).  See, e.g., Nestor v. Commissioner, supra at 167; Rochelle v. Commissioner, 116 T.C. 356, 363 (2001), affd. 293 F.3d 740 (5th Cir. 2002).

The question in such cases usually involves the effect, if any, that a procedural omission or error would have on the outcome or validity of respondent's actions. Generally, reviewing courts have disregarded procedural omissions or errors unless there was reliance on and prejudice to the complaining party.

The Court of Appeals for the First Circuit provided guidance, suggesting that a balanced approach be used in applying the rule of prejudicial error, as follows:

> be cautious in assuming that the result would be the same if an error, procedural or substantive, had not occurred, and there may be some errors too fundamental to disregard. But even in criminal cases involving constitutional error, courts may ordinarily conclude that an admitted and fully preserved error was "harmless beyond a reasonable doubt." Agency missteps too may be disregarded where it is clear that a remand "would accomplish nothing beyond further expense and delay." [Citations omitted.]

Save Our Heritage, Inc. v. FAA, 269 F.3d 49, 61-62 (1st Cir. 2001). It has been held that the party seeking judicial review of an agency action bears the burden of demonstrating prejudice from any error. Boyd v. United States, 121 Fed.Appx. 348, 350 (10th Cir. 2005), affg. 322 F.Supp.2d 1229 (D.N.M. 2004); DSE, Inc. v. United States, 169 F.3d 21, 31 (D.C. Cir. 1999).

In this case respondent failed to compute the amount of interest on three notices sent to petitioner after the extended effective date of sections 6631 and 6751(a). In that regard, respondent did include a telephone number that petitioner could

have used to obtain the amount of outstanding interest on his 1991 tax liability.  In addition, respondent provided petitioner with statements of the amount of interest outstanding at the time the Forms 4340 were presented to him.  Petitioner, who is an experienced attorney, does not contend or allege that he in any manner was prejudiced by respondent's failure to provide the amount of interest on the notices.  Petitioner has not stated how he may have been prejudiced by the omission of the amount of outstanding interest on the three notices.  The fact of the matter is that petitioner was well aware of the amount of interest and complained mightily about it.

In this record there was no prejudice on respondent's omission of the amount of interest on 3 of the 10 notices sent to petitioner.  Further, petitioner has not shown that he was prejudiced by such omissions.  Accordingly, we find it unnecessary to consider what type of remedial action, if any, would be appropriate.

VII.  <u>Whether Respondent's Filing of Notices of Federal Tax Lien was Improper Deprivation of Property or Property Rights</u>

Continuing with his shotgun approach to this proceeding, petitioner contends that "The Fifth Amendment to the United States Constitution provides that no person shall be deprived of life, liberty or property without due process of law, which is not a term without meaning."  Respondent's use of statutorily

created summary collection provisions has been approved by the courts for many years and found to be constitutional. Here, obviously, there is no taking or deprivation of property without due process. The administrative proceeding in which petitioner participated and the litigation in which he now engages are designed to provide petitioner with due process. See Myers v. United States, 647 F.2d 591, 602 (5th Cir. 1981). Moreover, petitioner availed himself of the opportunity to litigate the merits of respondent's determination of the underlying tax liability and pursued his position on appeal to the Court of Appeals for the Fifth Circuit. It was only after our decision in that case was final and petitioner's failure to pay that respondent used summary collection methods. Here again petitioner's contention is without substance or merit.

VIII. Whether Respondent Was Entitled To Offset Tax Refunds From Joint Returns of Petitioner and His Wife Against Petitioner's Outstanding Individual 1991 Tax Obligation

Petitioner's individual tax liability, including interest and penalties, was approximately $288,028.05 (with interest calculated to January 31, 2006). Respondent offset a total amount of $772.64 of refunds from petitioner's and his wife's joint 1999 through 2002 Federal income tax returns. Petitioner broadly contends that respondent is not entitled to offset joint income tax refunds against the individual tax of one of the joint filers.

Initially, the filing of a joint return does not, per se, make the joint filers equal "owners" of any refund of tax from said return. Instead, each joint filer is apportioned an interest in the overpayment to the extent he or she contributed to the overpayment. See Gens v. United States, 230 Ct. Cl. 42, 673 F.2d 366 (1982). In that regard, petitioner has not shown that any portion of the overpayments for the years 1999 through 2002 was attributable to his wife. Without such information, we cannot find that there was any abuse of discretion in not adjusting or reversing the offsets.

Conclusion and Holding--Although petitioner's filings were sparse and terse, we have carefully considered his summary contentions. To the extent that we have not addressed any particular aspect of his contentions, they are not worthy of further consideration or comment. We hold that respondent's determination to pursue collection by filing Notices of Federal Tax Liens was not an abuse of discretion. In this case where petitioner has not shown how a compromise of his liability would promote effective tax administration coupled with his admission that his assets are sufficient to pay the outstanding tax liability, respondent's refusal to consider alternatives is not an abuse of discretion. Petitioner's contention in this regard has been that the filing of a lien will affect his credit and ability to sell or transfer assets. Those reasons do not, per

se, make it unreasonable for respondent to refuse an offer-in-comprise.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent.</u>