T.C. Memo. 2013-113

UNITED STATES TAX COURT

KENNETH J. TAGGART, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24465-10L.            Filed April 18, 2013.

Kenneth J. Taggart, pro se.

<u>Kathleen K. Raup</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

THORNTON, <u>Judge</u>:  Pursuant to sections 6320(c) and 6330(d) petitioner

seeks review of respondent's determination sustaining the filing of a notice of

[*2] Federal tax lien with respect to petitioner's Federal income tax for tax years 2006 and 2007.[1]

## FINDINGS OF FACT

The parties have stipulated some facts, which we find accordingly. When petitioner filed his petition, he resided in Pennsylvania.

Background

During 2006 and 2007 petitioner worked as a real estate appraiser and a real estate broker. He conducted his business through two S corporations that he owned. He also owned four rental properties.

Petitioner's Tax Returns

On September 17, 2007, petitioner timely filed his 2006 Federal income tax return, reporting zero taxable income. On September 30, 2008, petitioner mailed to respondent an amended 2006 return, reporting taxable income of $100,796 and tax due of $20,557. He included no payment with his amended 2006 return. On

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

**[*3]** November 10, 2008, respondent assessed $22,554 in tax and $2,449 in statutory interest for petitioner's 2006 tax year.[2]

On September 30, 2008, petitioner timely filed his 2007 Federal income tax return, reporting taxable income of $133,351 and tax of $29,210. He included no payment with his 2007 return. On November 3, 2008, respondent assessed $31,576 in tax, $888 in statutory interest, and a $917 addition to tax pursuant to section 6651(a)(2) for failure to pay timely.[3]

Petitioner's Refinancing Activities

On July 16, 2008, petitioner refinanced the mortgage loan securing one of his rental properties and used the $31,561 of refinancing proceeds to pay non-Internal Revenue Service (IRS) debts. On or about December 22, 2008, he refinanced the mortgage loan securing another rental property and used the $38,414 of refinancing proceeds to pay non-IRS debts.

---

[2]The $1,997 difference between the $22,554 amount respondent assessed and the $20,557 of tax petitioner reported on his amended return reflects respondent's changing, pursuant to math error procedures, petitioner's filing status from "Head of Household", as claimed on his 2006 amended return, to "single". Petitioner does not contest this adjustment.

[3]The difference between the $31,576 respondent assessed and the $29,210 of tax shown on petitioner's return is attributable to respondent's math error adjustments, changing petitioner's filing status from "Head of Household" to "single", and reducing the amount of petitioner's claimed exemption. Petitioner does not contest these adjustments.

[*4] Petitioner's Offer-in-Compromise

On June 22, 2009, respondent received from petitioner an offer to compromise his 2006 and 2007 tax liabilities by paying $2,500 in monthly installments of $100 each, commencing in July 2009. The offer indicated that it was based on doubt as to collectibility.

Petitioner's offer-in-compromise was assigned to Revenue Officer Monica Wilborn (RO Wilborn). In a letter to petitioner dated February 5, 2010, RO Wilborn rejected petitioner's offer on the ground that the amount offered was less than the reasonable collection potential (RCP) she calculated in worksheets attached to the letter.[4] RO Wilborn determined that petitioner could pay the full amount due. The letter stated that if petitioner disagreed with these findings, he should provide, within 30 days of the date of the letter, any additional information in writing to support his position and, if he desired reconsideration by the IRS Appeals Office, a written statement requesting such reconsideration. The letter stated: "If you do not send this written statement within 30 days of the date of this letter you will not receive consideration by the Office of Appeals". The letter also

---

[4]RO Wilborn prepared an Income/Expense Table and Asset/Equity Table using information petitioner had submitted. These tables indicated that petitioner's "reasonable collection potential" was $317,123, including the proceeds he had received from refinancing the mortgage loan securing his two rental properties.

**[*5]** stated: "We may file a notice of federal tax lien in order to protect the government's interests. In order to prevent this action, please pay your liability in full. After we file a notice of federal tax lien you will have the opportunity to request a hearing with Appeals".

By letter dated March 4, 2010, petitioner advised RO Wilborn of his disagreement with her findings and sought to appeal her rejection of his offer. Petitioner claims that he faxed this letter to RO Wilborn on March 4, 2010, and placed the original letter in the mail on March 8, 2010. Respondent asserts that he received no fax of this letter but rather first received the letter on March 12, 2010, in an envelope with a March 9, 2010, postmark.

In a letter dated March 16, 2010, RO Wilborn rejected petitioner's appeal as untimely but invited him to submit a new offer-in-compromise if he wished.

Notice of Federal Tax Lien and Collection Due Process Hearing

On February 22, 2010, respondent filed a notice of Federal tax lien against petitioner in Bucks County, Pennsylvania, in the amount of $59,371 for taxable years 2006 and 2007. On February 23, 2010, respondent sent petitioner a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320 (notice) with respect to petitioner's 2006 and 2007 tax years. On March 31, 2010, petitioner submitted a Form 12153, Request for a Collection Due Process or

[*6] Equivalent Hearing. In a cover letter accompanying the Form 12153 petitioner asserted that a tax lien had been placed on his property before the offer-in-compromise process had been completed. Petitioner also asserted in this letter that he "would like to submit and discuss this current offer in compromise, or if needed a resubmission of an offer and compromise to resolve the issue". Petitioner's case was assigned to Settlement Officer Robert A. Richards (SO Richards).

In a June 17, 2010, letter to SO Richards, petitioner contended that he had made a timely appeal of RO Wilborn's rejection of his offer-in-compromise. The letter also asserted that the lien had been improperly filed on February 23, 2010, before any Appeals Office consideration; that the lien would result in undue hardship to him and impede the IRS' ability to collect his tax; that he disputed the findings of the IRS with respect to his offer-in-compromise; and that the assessment was "inaccurate" in some unspecified way. Petitioner also indicated that he was interested in pursuing an installment agreement but that because of a dramatic decline in his real estate appraisal business, he was able to pay only $100 per month.[5]

---

[5]Petitioner's June 17 letter does not indicate the repayment period nor the total amount petitioner proposed to pay on the installment agreement.

**[*7]**   On July 7, 2010, SO Richards held the requested hearing with petitioner. During the hearing petitioner expressed disagreement with RO Wilborn's rejection of his offer.  SO Richards indicated to petitioner that his attempted appeal of RO Wilborn's rejection of his offer was untimely.  According to SO Richards' case activity record, he also advised petitioner that he was free to submit another offer but that, on the basis of his review of the financial information that petitioner had previously submitted, his determination would coincide with that of RO Wilborn. According to SO Richards' case activity record, petitioner did not otherwise raise any collection alternatives, nor did he challenge his underlying tax liabilities.  SO Richards also discussed with petitioner the dissipation of the proceeds from petitioner's refinancings of rental properties in 2008, but petitioner provided no plausible reason for ignoring the IRS.  According to the case activity record, SO Richards informed petitioner at the conclusion of the hearing that on the basis of their discussion he would sustain the collection, but that he would take the time to look at documents that petitioner would forward to his attention.

On or about July 12, 2010, petitioner sent SO Richards a package of documents that included a filled-out Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, and Form 433-B, Collection Information Statement for Businesses, with some supporting

[*8] documentation.  Petitioner's cover letter stated in its entirety:  "As requested at the hearing on June 17, 2010, I have enclosed updated financial information that you requested.  Please do not hesitate to contact me with anything else you may need".

According to SO Richards' case activity record, on July 12, 2010, he made a "cursory review" of the documents received from petitioner and concluded they did not support withdrawing the lien.  Another entry on September 21, 2010, indicates that after an "exhaustive review" of petitioner's circumstances, SO Richards had determined that RO Wilborn's actions had been appropriate.

On October 4, 2010, respondent issued petitioner a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice) sustaining the filing of the notice of Federal tax lien.  An attachment to the notice states, among other things, that petitioner had not challenged his underlying liabilities at any time during the hearing and that his primary concern had been the adverse effect of the tax lien on his ability to earn a living as a mortgage broker.  The attachment notes that during her review of petitioner's offer-in-compromise, RO Wilborn had determined that the filing of a lien would be appropriate.  The attachment notes that "at the time the assessments for 2006 and 2007 were recorded, Mr. Taggert [sic] received a distribution from individual retirement

[*9] account (IRA)/401K plans totaling close to $70,000" but he had failed to make any effort to reduce the amounts of his tax liabilities, preferring other creditors over the IRS. The attachment also states that the offer-in-compromise that petitioner had submitted "prior to the filing of the CDP request" had been rejected because RO Wilborn had determined that petitioner's RCP was greater than the amount owed and that his appeal of RO Wilborn's rejection of his offer-in-compromise had been untimely. The attachment states that petitioner "expressed no interest in exploring a collection alternative with the Settlement Officer".

## OPINION

### I. Statutory Framework

Section 6321 imposes a lien in favor of the United States on all property and property rights of a person who is liable for and fails to pay tax after demand for payment has been made. The lien arises when assessment is made and continues until the assessed liability is paid. Sec. 6322. For the lien to be valid against certain third parties, the Secretary must file a notice of Federal tax lien; within five business days thereafter, the Secretary must provide written notice to the taxpayer. Secs. 6320(a), 6323(a). Within 30 days commencing after the end of the 5

[*10] business days, the taxpayer may request an administrative hearing before the Appeals Office. Sec. 6320(b)(1); sec. 301.6320-1(c)(1), Proced. & Admin. Regs.

In such a hearing a person may raise spousal defenses, challenges to the appropriateness of the Commissioner's intended collection action, and possible alternative means of collection. Sec. 6320(c), 6330(c)(2). The person may challenge the existence or amount of his or her underlying tax liability in such a hearing only if he or she did not receive a statutory notice of deficiency for the tax liability or did not otherwise have an opportunity to dispute the underlying liability. Sec. 6330(c)(2)(B). The term "underlying tax liability" includes amounts reported due on taxpayers' returns as well as statutory interest, additions to tax, and penalties. See Montgomery v. Commissioner, 122 T.C. 1, 7-8 (2004); Katz v. Commissioner, 115 T.C. 329, 339 (2000); Wilson v. Commissioner, T.C. Memo. 2012-229.

Once the Appeals officer issues a notice of determination, the taxpayer may seek judicial review in this Court. Secs. 6320(c), 6330(d)(1). If the validity of the underlying tax liability is properly at issue, we review that issue de novo. See Wadleigh v. Commissioner, 134 T.C. 280, 288 (2010); Sego v. Commissioner, 114 T.C. 604, 610 (2000). Other issues we review for abuse of discretion. Wadleigh v. Commissioner, 134 T.C. at 288; Sego v. Commissioner, 114 T.C. at 610.

- 11 -

[*11] II.  Petitioner's Underlying Tax Liabilities

Petitioner contends that he is not liable for the section 6651(a)(2) addition to tax with respect to his 2007 tax year or statutory interest under section 6601 with respect to his 2006 and 2007 tax years.

During his Appeals hearing petitioner failed to make any meaningful challenge to the section 6651(a)(2) addition to tax or to the statutory interest. Consequently, petitioner is precluded from raising these challenges to his underlying liabilities in this proceeding.[6]  See Giamelli v. Commissioner, 129 T.C. 107, 114 (2007).

III.  Petitioner's Collection Alternatives

Petitioner argues that RO Wilborn improperly rejected his offer-in-compromise and his attempt to appeal that action to the IRS Appeals Office. Pursuant to section 6330(d)(1) our jurisdiction in this proceeding is with respect to

---

[6]Even if we were to assume, contrary to our findings above, that petitioner properly raised the issue of his underlying liabilities in the Appeals hearing, we would still conclude that he has failed in this proceeding to show that the underlying liability for either year at issue is in error.  In particular, the stipulated facts establish that petitioner failed to pay his reported tax liability when he filed his 2007 Federal income tax return; petitioner has not shown reasonable cause for this failure so as to create a valid defense to imposition of the sec. 6651(a)(2) addition to tax.  Moreover, petitioner has not shown in what manner the statutory interest might be in error for either 2006 or 2007; the record does not suggest that petitioner has requested respondent to abate interest pursuant to sec. 6404.

[*12] the Appeals officer's determination under "this section"; i.e., section 6330. By virtue of section 6320(c), this jurisdiction extends to an Appeals Office determination under section 6320. Consequently, we lack jurisdiction in this proceeding to review, in the first instance, the determinations that RO Wilborn made before petitioner even requested a hearing pursuant to section 6320. We do, however, have jurisdiction to review SO Richards' determinations.

SO Richards determined, among other things, that petitioner's appeal of RO Wilborn's rejection of his offer-in-compromise was untimely. Assuming, without deciding, that this is an issue that petitioner was entitled to raise in his section 6320 hearing, we find no abuse of discretion in this determination. Petitioner contends that his appeal was timely because he faxed his notice of appeal to RO Wilborn on March 4, 2010, which was the last day of the 30-day deadline to send the appeal. On the basis of the record before us, which contains no documentary evidence sufficient to establish that petitioner sent such a fax on March 4, 2010, we conclude that SO Richards did not abuse his discretion in finding that the appeal was untimely. In any event, whether that appeal was timely is ultimately of little consequence, since petitioner had the opportunity to propose collection alternatives and to resubmit his previously rejected offer-in-compromise in his section 6320 hearing.

[*13] Insofar as the record reveals, during his section 6320 hearing petitioner never formally submitted any new offer-in-compromise to SO Richards, even though he was advised he could do so, but instead sought to have SO Richards reconsider the offer-in-compromise that RO Wilborn had already rejected. Insofar as it might be thought that petitioner thereby informally proposed, for SO Richards' consideration, the same offer-in-compromise that RO Wilborn had previously rejected, SO Richards did not abuse his discretion in relying on RO Wilborn's analysis, which showed that petitioner's RCP exceeded the amount of his offer.

In particular, SO Richards focused on and discussed with petitioner RO Wilborn's finding that petitioner had dissipated $69,975 in assets by refinancing the mortgage loan securing two rental properties in 2008 and using the proceeds to pay non-IRS debts.[7] A dissipated asset, defined as any asset that has been sold, transferred, or spent on nonpriority items or debts in disregard of an outstanding tax liability, may be included in a taxpayer's RCP. See Johnson v. Commissioner,

---

[7]We attach little significance to the fact that the notice of determination misdescribes the dissipated assets as proceeds from a "distribution from IRA/401K plans". On the basis of the administrative record as a whole, we find persuasive respondent's contention that SO Richards was in fact referring to the proceeds from petitioner's refinancings of his rental properties, which RO Wilborn had identified as sources of dissipated assets.

**[\*14]** 136 T.C. 475, 487 (2011), aff'd, __Fed. Appx. __, 2013 U.S. App. LEXIS 2082 (D.C. Cir. Jan. 29, 2013); Tucker v. Commissioner, T.C. Memo. 2011-67, aff'd, 676 F.3d 1129 (D.C. Cir. 2012).  The record indicates that during the Appeals hearing petitioner failed to show that he used the dissipated assets for necessary living expenses so as to make them excludable from RCP.  Cf. Internal Revenue Manual (IRM) pt. 5.8.5.5.(4) (Sept. 23, 2008).  Nor, despite his assertions to the contrary, has petitioner made any such showing in this proceeding.  SO Richards did not abuse his discretion in concurring with RO Wilborn's conclusion that petitioner's RCP, taking into account the $69,975 of dissipated assets, exceeded his $2,500 offer.[8]  See Johnson v. Commissioner, 136 T.C. at 478; Tucker v. Commissioner, T.C. Memo. 2011-67.

On brief petitioner suggests that it was improper for RO Wilborn and SO Richards to treat the refinancing proceeds as dissipated assets because the refinancings occurred "before lien was placed on petitioner".  Petitioner is mistaken.  Petitioner's income tax for 2006 and 2007 was due on the dates the returns were required to be filed (determined without regard to any extension of

[8]Petitioner also takes issue with various other items in RO Wilborn's calculation of his RCP.  We need not and do not address these other items because even without taking them into account, we find the dissipated assets are sufficiently large to justify respondent's determination that petitioner's RCP exceeded his offer.

**[\*15]** time for filing); i.e., April 16, 2007, and April 15, 2008, respectively. <u>See</u> secs. 6072(a), 6151(a); <u>Tucker v. Commissioner</u>, T.C. Memo. 2011-67. The refinancings occurred on July 16, 2008, and November 10, 2008, after his tax liabilities for both 2006 and 2007 had already accrued. In fact, by the time petitioner received about $38,000 of refinancing proceeds on November 10, 2008, he had already filed his amended 2006 income tax return and his 2007 income tax return, each showing a tax liability. The IRS assessed the amounts shown on those returns (plus interest and the addition to tax) on November 3 and November 10, 2008, respectively--the latter date being the same date as the last refinancing. Under these circumstances, SO Richards did not abuse his discretion in concluding that the refinancing proceeds were properly included in petitioner's RCP as dissipated assets. <u>See</u> <u>Tucker v. Commissioner</u>, T.C. Memo. 2011-67; IRM pt. 5.8.5.5 (7) (Sept. 23, 2008) (discussing timing of transfer of assets).

IV. <u>Challenges to Appropriateness of Notice of Lien Filing</u>

Petitioner contends that respondent improperly filed the notice of tax lien before RO Wilborn had rejected his offer-in-compromise. Petitioner is mistaken. The Commissioner is not precluded from filing a notice of tax lien while a pending offer is being reviewed or even after it is accepted. <u>See</u> <u>Baltic v. Commissioner</u>,

**[\*16]** 129 T.C. 178, 180 n.4 (2007); <u>Schropp v. Commissioner</u>, T.C. Memo. 2010-71, <u>aff'd</u>, 405 Fed. Appx. 800 (4th Cir. 2010).

Petitioner argues that the filing of the notice of tax lien resulted in an undue hardship to him. He argues that the filing of the notice of tax lien has hindered him from participating in Federal Housing Administration (FHA) appraisals. Petitioner conceded at trial, however, that because of a prior loan default he would have been disqualified from conducting FHA appraisals even if respondent had withdrawn the lien. Moreover, as just discussed, in 2008 petitioner dissipated approximately $70,000 that he could have used to repay his tax liabilities. We conclude and hold that SO Richards did not abuse his discretion in determining that the filing of the notice of tax lien did not create an undue hardship for petitioner.

Petitioner suggests that the notice of Federal tax lien hampers his payment of his outstanding tax liabilities and that withdrawing the notice would be in the best interests of both the United States and himself. Section 6323(j) permits the Secretary to withdraw a notice of Federal tax lien if he determines, among other things, that the "withdrawal of such notice will facilitate the collection of the tax liability" or "the withdrawal of such notice would be in the best interests of the taxpayer * * * and the United States." Section 6323(j) uses discretionary, not

[*17] mandatory, language, and respondent is not required to withdraw the lien even for one of the reasons stated in section 6323(j). See Kyereme v. Commissioner, T.C. Memo. 2012-174; Crisan v. Commissioner, T.C. Memo. 2007-67; see also sec. 301.6323(j)-1(c), Proced. & Admin. Regs. Respondent did not abuse his discretion in not withdrawing the lien notice, especially in the light of petitioner's dissipation of approximately $70,000 in assets.

Petitioner asserts that respondent violated his due process rights under the Fifth Amendment by filing the lien without first affording him a hearing. For many years the courts have approved the Commissioner's use of statutorily created summary collection provisions and found them to be constitutional. See Phillips v. Commissioner, 283 U.S. 589 (1931); Kahn v. United States, 753 F.2d 1208, 1218 (3d Cir. 1985). Respondent's filing of notices of Federal tax lien did not improperly deprive petitioner of property or property rights. See Scott v. Commissioner, T.C. Memo. 2007-91, aff'd, 262 Fed. Appx. 597 (5th Cir. 2008). The enactment in 1998 of sections 6320 and 6330 created certain precollection rights and privileges, and petitioner has availed himself of them in his Appeals hearing and in this proceeding. These procedures do not require a hearing before the Commissioner files a lien, nor does the Constitution. See Benistar Admin Servs., Inc., v. United States, 758 F. Supp. 2d 95 (D. Conn. 2010).

[*18] On the basis of our examination of the entire record before us, we conclude and hold that respondent did not abuse his discretion in determining to proceed with the collection action as determined in the notice of determination.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.